[S. F. No. 6752.    Department One.—January 31, 1916.]

# HENRY STEIL, Appellant, v. SUN INSURANCE OFFICE OF LONDON, Respondent.

# HENRY STEIL, Appellant, v. LONDON ASSURANCE CORPORATION, Respondent.

# HENRY STEIL, Appellant, v. NORTHERN ASSURANCE COMPANY, Respondent.

NEW TRIAL—ORDER GRANTING—APPEAL—GROUNDS OF MOTION—INSUFFICIENCY OF EVIDENCE.—Where the trial court, in granting a new trial, states in the order that it is denied so far as the sufficiency of the evidence is concerned, that particular ground is excluded from consideration upon appeal from the order.  With respect to any other ground advanced in support of the motion, however, the decision of the court below that the new trial was refused with respect to any one of them is not binding upon the appellate court, and, upon appeal, the latter court may consider such question.

ID.—GROUNDS OF MOTION NOT BASIS OF ORDER.—If the appellate court finds that the court below erred in granting the new trial, so far as the grounds upon which that court based the order are concerned, but concludes that the new trial should have been granted because of some other ruling on a question of law, which the trial court believed was not erroneous, it will affirm the order.

FIRE INSURANCE—CHANGE IN POSSESSION OF PROPERTY INSURED—CHANGE IN LOCATION.—A provision in a policy of fire insurance that the policy should become void "if any change, other than by the death of the insured, takes place in the possession of the subject of insurance (except change of occupants without increase of hazard)," refers to the person having the possession, rather than to the location of the property, and it does not make the policy void where the only change relating to the possession is a mere change in the location of the goods by removal to another building.

ID.—LOCATION OF INSURED PROPERTY—REMOVAL TO DIFFERENT PLACE—WARRANTY.—A provision in the insurance clause of a fire insurance policy that the goods were insured while contained in a specified building, and not elsewhere, coupled with the qualified description of the goods "all while contained in" such building, while not constituting a warranty by the assured, either express or implied, that he would not remove the goods, operated to relieve the insurer of further obligation upon the removal of the goods from said building with respect to the goods so removed.

ID.—TEMPORARY TERMINATION OF RISK BY REMOVAL—TERMINATION OF POLICY.—There being no condition or covenant in the policy against

removal, the result would be that while such removal would, for the time being, terminate the risk incurred by the insurer, it would not avoid the policy. If the goods were subsequently returned, the insurer would be liable, as before, for a loss occurring to them while in the building.

ID.—CONTINUANCE OF INSURANCE AFTER REMOVAL—NOTIFICATION TO INSURER—NEW AGREEMENT—ESTOPPEL.—In order to continue the insurance upon the goods after their removal to a new location, something more was required than a mere notification by the insured to the insurer of the fact that the goods were, or were about to be, removed. The insurer must be informed, or be given good cause to believe, that the insured desired to have the insurance on the goods continued in the new place, that he wished a modification of the policy to make it cover the goods in the new location, and must then, by positive act, or by failure to act, cause the insured to believe that the insurer consented to such transfer or modification, and that the goods were covered by the policy. Something in the nature of a new agreement, either express or implied from conduct or words, or created by estoppel, was necessary.

ID. — ACTION TO RECOVER FOR LOSS AFTER REMOVAL — ERRONEOUS INSTRUCTION.—In an action to recover for the loss of such goods after their removal to and while they were in a new locality, an instruction to the jury that a mere notification of removal, followed by silence and failure to cancel the policy and return the unearned premium, would operate to estop the insurer from denying that it had consented to the removal and had agreed that the policy should cover the goods, notwithstanding such removal, is incomplete and erroneous.

ID.—ESTOPPEL OF INSURER TO ASSERT VIOLATION OF POLICY—FORFEITURE—REMOVAL NOT A FORFEITURE OR AVOIDANCE OF POLICY.—The rule that an insurance company waives or is estopped to assert a violation of the terms of the policy, if the company, on being notified of the violation, remains silent and fails to object or to declare a forfeiture, or cancel or rescind the contract, within a reasonable time, while applicable in all cases where the facts brought to the insurer's knowledge show some violation of the terms of the policy which, either by law or because of some provision of the policy itself, operates to avoid or forfeit the policy, is inapplicable to the case of the removal of the goods insured, which neither forfeited nor avoided the policy, and was not a violation of any of its express provisions.

ID.—REMOVAL TO LESS HAZARDOUS LOCATION — EVIDENCE. — In such an action, evidence that the building to which the goods were removed was a less hazardous location than the building in which the goods were situated when insured is admissible upon the disputed question whether or not the insurer's agents had consented to continue the risk in the new place.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial.    Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Peter F. Dunne, C. W. Durbrow, and C. H. Wilson, for Appellant.

T. C. Van Ness, and T. C. Van Ness, Jr., for Respondent Sun Insurance Office of London.

Chickering & Gregory, and W. S. Dorn, for Other Respondents.

SHAW, J.—Henry Steil had three policies of insurance covering goods situated in the Chronicle building, in San Francisco, one issued by Sun Insurance Office of London, one by London Assurance Corporation, and the third by Northern Assurance Company.    In January, 1906, he removed the goods to the Shreve building.    He claims that this was done with the knowledge and consent of each of said companies and that they agreed that the removal should not terminate the insurance provided by the policies.    On April 19, 1906, the goods were destroyed by the great fire of that date.    The companies refused to pay the loss and thereupon he began three actions, entitled as above, against the respective companies, to recover the amounts due by the respective policies.    These actions were consolidated for the purposes of the trial, the issues being practically identical in character.    There was a trial by jury and a verdict and judgment for the plaintiff in each case.    Thereupon the defendants, respectively, moved for a new trial.    The motion was granted.    The plaintiff appealed from the order in each case.    By agreement of the parties and with the consent of this court the appeals have also been consolidated and are presented by a single transcript embracing the record in all the cases.

The order granting a new trial states that the court finds that the evidence was sufficient to justify the verdict, that the new trial was granted because the court was of the opinion that it had erred in giving two instructions to the jury set out in full in the order, and that it was denied with respect to all

other grounds presented in support of the motion. The instructions referred to are as follows:

"1. If you find from the evidence in this case that the assured notified or caused to be notified the defendants, or any of them, of the change of location of his goods, wares, and merchandise from the Chronicle building to the Shreve building, and that said defendant or defendants so notified remained silent and failed to object and cancel or rescind the contract of insurance and return the unearned premium, then I charge you that said defendant or defendants so notified, failing in this regard, is estopped from denying that its policy of insurance was in force and covered the goods, wares, and merchandise of the plaintiff in the Shreve building at the time of the destruction of the same by fire on the 18th day of April, 1906."

"2. I charge you that an insurance company waives or is estopped from asserting a violation of the terms of an insurance contract such as is involved in a change of location of the assured property, if the company, on being notified of such violation or change of location, remains silent and fails to object or fails to declare a forfeiture or cancel or rescind the contract within a reasonable time, returning the unearned premium."

Where the trial court, in granting a new trial, states in the order that it is denied so far as the sufficiency of the evidence is concerned, that particular ground is excluded from our consideration upon appeal from such order. With respect to any other ground advanced in support of the motion, however, the decision of the court below that the new trial was refused with respect to any one of them is not binding upon this court, and, upon appeal, we may consider such question. If we find that the court below erred in granting the new trial, so far as the grounds upon which that court based the order are concerned, but conclude that the new trial should have been granted because of some other ruling on a question of law, which the trial court believed was not erroneous, we will affirm the order. (*Kauffman* v. *Maier*, 94 Cal. 269, [18 L. R. A. 124, 29 Pac. 481]; *Shanklin* v. *Hall*, 100 Cal. 28, [34 Pac. 636]; *Thompson* v. *California etc. Co.*, 148 Cal. 38, [82 Pac. 367]; *Weisser* v. *Southern Pacific Co.*, 148 Cal. 428, [7 Ann. Cas. 636, 83 Pac. 439]; *Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 134, [5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *Gordon* v. *Roberts,*

162 Cal. 508, [123 Pac. 288].)    The respondents claim that there were such other rulings.    The main questions, however, are those involved in the instructions aforesaid.    A preliminary statement of the facts and of the law relating to them is necessary.

The policies are all in the same form, and we will speak of them as if there were but one.    In what may be termed the insurance clause, the policy declares that the company insures the goods "while located and contained as described herein, and not elsewhere," the place described being the Chronicle building.    The description of the goods was immediately followed by the qualifying phrase, "all while contained in the Chronicle building."    The policy provided that it could be canceled at any time "at the request of the insured, or by the company by giving five days' notice of such cancellation," and that in case of such cancellation the unearned premium should be returned on the surrender of the policy.    It further provided that the policy should become void "if the hazard be increased by any means within the control or knowledge of the insured, . . . or if any change, other than by the death of the insured, takes place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard)," and the usual clause that no agent of the company had power to waive any provision of the policy, except by indorsement on the policy or by writing attached thereto.    We think the above quoted passage relating to a change of "possession" of the goods refers to the person having the possession, rather than to the location of the property, and it does not make the policy void where the only change relating to the possession is a mere change in the location of the goods by removal to another building.

About two months before the removal of Steil to the Shreve building a fire occurred in the Chronicle building, which damaged his goods.    This loss and the amount thereof due from each of the defendants was in process of adjustment at the time of the removal.    The evidence on the question whether Steil notified the defendant companies of his removal to the Shreve building of the goods covered by the policy is in sharp conflict.    That for the plaintiff tended to show that he had presented the policies to the defendants for the purpose of having the consent of the companies to the removal indorsed thereon, that owing to the pending settlement of the previous

loss, he declined to leave the policies with the companies to have such indorsement made, and that he was thereupon informed by the agents of each of the defendants that it would be all right, and that the goods were covered in the Shreve building, as before the removal. The facts that none of the companies have objected to the removal, or have given notice that the goods were not covered in the new place, are not disputed. It was to this condition of the evidence that the above instructions were addressed.

As above stated, there is no provision in the policy that the removal of the goods should operate to annul it. The provision in the insurance clause that the goods were insured while contained in the Chronicle building, and not elsewhere, coupled with the qualified description, operated to relieve the company of further obligation upon the removal of the goods from said building with respect to the goods so removed. The qualification was a part of the description of the things insured. They were not merely *the goods,* but were the goods while contained in the Chronicle building. A loss of the goods by fire while they were out of the building would not be a loss covered by the policy, and the insured would not be liable therefor. (*Mawhinney* v. *Southern Ins. Co.,* 98 Cal. 184, [20 L. R. A. 87, 32 Pac. 945] ; *Benicia A. Works* v. *Germania Ins. Co.,* 97 Cal. 468, [32 Pac. 512] ; *Slinkard* v. *Manchester etc. Co.,* 122 Cal. 595, [55 Pac. 417].) This language of the insurance clause did not constitute a warranty, either express or implied, by Steil, that he would not remove the goods. The company had no occasion to demand of Steil a warranty against removal. Such removal would not increase its obligation but would relieve it therefrom. The insurance clause completely protected it against a loss occurring to the goods in any other place. The language does not imply a warranty. Its effect is merely that the goods were insured only while kept in the building designated. There being no condition or covenant against removal, the result would be that while such removal would, for the time being, terminate the risk incurred by the company, it would not avoid the policy. If the goods were subsequently returned, the company would be liable, as before, for a loss occurring to them while in the building.

In order to continue the insurance upon the goods, or, in other words, to carry it to the goods in the new location, some-

thing more was required than a mere notification by the insured to the insurer of the fact that the goods were, or were about to be, removed. That fact alone would only suspend the insurance risk. The insurer must be informed, or be given good cause to believe, that the party insured desired to have the insurance on the goods continued in the new place, that he wished a modification of the policy to make it cover the goods in the new location, and must then, by positive act, or by failure to act, cause the insured to believe that the insurer consented to such transfer or modification, and that the goods were covered by the policy. Something in the nature of a new agreement, either express, or implied from conduct or words, or created by estoppel, was necessary. The instructions informed the jury that a notification of removal, followed by silence and failure to cancel the policy and return the unearned premium, would operate to estop the insurer from denying that it had consented to the removal and had agreed that the policy should cover the goods, notwithstanding such removal. They should have contained the additional premise that the assured, upon such notification, requested that the policy be transferred to the new location, or that the insurance be continued, notwithstanding the removal, or something to indicate that the notification was given under circumstances which would have given the insurer reasonable cause to believe that the assured desired or expected the matter to be so adjusted. The evidence concerning the notification referred to all indicated that such desire and expectation existed and was made known to the assured, but the instructions omitted all reference thereto. In this respect they were defective, incomplete, and possibly misleading.

It is stated in the briefs that the instructions were based on a passage from Cooley's Briefs on Insurance (volume 3, page 2665) regarding "the effect of an insurer's failure to act on obtaining knowledge of facts which either avoid or forfeit a policy," and saying: "The weight of authority supports the proposition that an insurance company waives or is estopped to assert a violation of the terms of an insurance contract if the company, on being notified of the violation, remains silent and fails to object or to declare a forfeiture, or cancel or rescind the contract, within a reasonable time. This rule is no doubt in most cases based on the theory that it is a breach of good faith on the part of an insurance company to remain

CLXXI Cal.—51

silent and inactive on notice of a breach, and to retain the unearned premiums, and so lead the insured to believe that his insurance contract is regarded as valid notwithstanding the breach.''

This rule is doubtless applicable in all cases where the facts brought to the insurer's knowledge show some violation of the terms of· the policy, which, either by law or because of some provision of the policy itself, operates to avoid or forfeit the policy. As we have shown, the removal of the goods neither forfeited nor avoided the policy, and was not a violation of any of its express provisions. Some cases are cited which it is claimed support the position that a mere knowledge of removal, under such a policy, requires prompt action by the insurer by way of rescission or cancellation and return of the unearned premium, if it does not consent to the removal and to a continuation of the insurance in the new location. These are *Pollock* v. *Germania Co.*, 127 Mich. 460, [86 N. W. 1017] ; *Williamsburg City Fire Ins. Co.* v. *Cary*, 83 Ill. 453; *Ohio etc. Co.* v. *Burget*, 65 Ohio St. 119, [87 'Am. St. Rep. 596, 55 L. R. A. 825, 61 N. E. 712] ; *McIntyre* v. *Liverpool etc. Co.*, 131 Mo. App. 88, [110 S. W. 604] ; *Shutts* v. *Milwaukee etc. Co.*, 159 Mo. App. 436, [141 S. W. 15] ; *Henschel* v. *Oregon etc. Co.*, 4 Wash. 476, [30 Pac. 735, 31 Pac. 332, 765] ; and *Maryland etc. Co.* v. *Gusdorf*, 43 Md. 506. An examination of the opinions in these cases shows that they did not involve instructions so bare of detail as those here given. In each of them the law was predicated upon a statement of facts which included a request, express or implied, by the assured to continue the insurance described in the policy, notwithstanding the removal of the goods insured to a place not covered by the terms of the policy. In the Ohio case, the policy provided that a removal of the goods without the consent of the insurer would forfeit the insurance. They are, therefore, not authority for the proposition that bare knowledge, or a mere notice of the fact of removal, followed by silence and inaction will estop the company and carry the insurance to the new place. We are of the opinion that the court below was correct in its conclusion that these instructions do not fully state the law. We cannot say that its order was an abuse of discretion.

It was not error to admit evidence that the Shreve building was a less hazardous location than the Chronicle building. It was material upon the disputed question whether or not the

companies' agents had consented to continue the risk in the new place, showing that it was not against their interest and, consequently, that it was more probable that they would consent than if the risk had been thereby increased.   It tended to corroborate the testimony of the plaintiff's witnesses as to such consent.    There are no other points that require notice.

The order is affirmed.

Sloss, J., and Lawlor, J., concurred.