[Civ. No. 4658.   First Appellate District, Division One.—September 18, 1924.]

## J. H. LIMSKY et al., Respondents, v. SCOTTISH UNION AND NATIONAL INSURANCE COMPANY (a Corporation), Appellant.

[1] INSURANCE—FORFEITURE—WAIVER.—Forfeiture clauses of an insurance policy may be orally waived.

[2] ID.—ACTION UPON FIRE INSURANCE POLICY—ASSIGNMENT—WAIVER OF PROVISION—EXCLUSION OF EVIDENCE—PREJUDICIAL ERROR.—In an action by assignees of an excelsior plant and of a policy insuring said plant against loss from fire upon such insurance policy, where the question whether the provision in the policy, that said policy should be void if assigned before a loss unless otherwise provided by agreement indorsed thereon or added thereto, was waived by defendant insurance company was the principal issue and the whole case was tried upon that theory, and no attempt was made to change any of the provisions of the policy, other than with reference to its assignment, the question whether or not there was a verbal waiver could in nowise affect the validity of the policy or its terms, and consequently the defendant was entitled to show all of the facts and circumstances, arising both before and after the fire, relating to the alleged sale of the plant and notice thereof, and to the assignment of the policy; and rulings of the trial court precluding defendant from making such showing constituted prejudicial error.

(1) 32 C. J., p. 1339, sec. 609.   (2) 22 C. J., p. 1210, sec. 1611; 33 C. J., p. 120, sec. 847.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

J. F. Riley for Appellant.

Sapiro, Levy, Hatfield & Hayes and Sapiro, Levy & Hayes for Respondents.

1.   See 14 Cal. Jur. 533; 14 R. C. L. 1155.
2.   See 14 Cal. Jur. 625; 14 R. C. L. 1187.

ST. SURE, J.—Action upon a fire insurance policy for $3,500, loss on building, merchandise, and fixtures. The case was tried before a jury, resulting in a verdict for plaintiffs for the full amount of the policy, with interest. Defendant appeals from the judgment.

The complaint alleges that on or about the tenth day of April, 1919, James V. Jeffress and W. T. Wilkins, then owners of an excelsior plant in Oakland, sold the same to plaintiffs and also assigned to plaintiffs the insurance policy upon which this suit was brought; that immediately thereafter Mr. Wilkins, at the request of plaintiffs, notified Mrs. Stromberg, the agent of defendant Insurance Company, of the sale and assignment and that the policy had been lost; that thereupon the agent verbally consented to the sale and assignment of the property and policy and verbally waived the provision in the policy that it should be void if assigned before a loss unless otherwise provided by agreement indorsed thereon or added thereto; that plaintiffs, relying upon the knowledge of such notice, consent and waiver did not obtain or attempt to obtain other insurance upon the property in the place of that issued by defendant; that on April 16th the property was totally destroyed by fire; that plaintiffs thereafter gave defendant written notice of the fire and the destruction of the property, and that defendant on April 18th denied and disclaimed liability and refused to pay the loss. Defendant denied the allegations as to consent and waiver and set up the following defenses: Assignment of the policy before loss without consent of company; that the loss occurred while the interest in, title to and possession of the subject of the insurance was changed, without agreement of the company to such transfer; that the plaintiffs at the time of the fire were not the sole and unconditional owners of the property alleged to have been destroyed; false and fraudulent swearing by plaintiffs.

It is admitted that the policy was assigned before the loss and that no agreement providing therefor was indorsed upon or added to it. It is sought to avoid the effect of this by claiming an oral waiver of the condition of the policy. [1] It is well settled in California that forfeiture clauses of an insurance policy may be orally waived. (*Bank of Anderson* v. *Home Ins. Co.,* 14 Cal. App. 208, 213 [111 Pac. 507];

68 Cal. App.—44

*Mackintosh* v. *Agricultural Fire Ins. Co.,* 150 Cal. 440, 447 [119 Am. St. Rep. 234, 89 Pac. 102]; *McCollough* v. *Home Ins. Co.,* 155 Cal. 659, 664 [18 Ann. Cas. 862, 102 Pac. 814]; *Faris* v. *American National Assur. Co.,* 44 Cal. App. 48, 56 [185 Pac. 1035]; *Farnum* v. *Phoenix Ins. Co.,* 83 Cal. 246, 261 [17 Am. St. Rep. 233, 23 Pac. 869]; *Raulet* v. *Northwestern etc. Ins. Co.,* 157 Cal. 213, 233 [107 Pac. 292]; *Knarston* v. *Manhattan Ins. Co.,* 140 Cal. 57, 63 [73 Pac. 740].) In the instant case it is conceded that the insurance agent had authority to waive the policy provisions.

The following statement of facts is mainly taken from the brief of respondents. James V. Jeffress and W. T. Wilkins were the owners of an excelsior plant in Oakland and they secured from the defendant a fire insurance policy covering this property. The policy was issued by John F. Stromberg & Co., the Oakland agent of the Scottish Union and National Insurance Company, and credit was extended for the payment of the premium amounting to $231.

On the 10th of April, 1919, the property in question was sold for $6,000 by Jeffress and Wilkins to J. H. Limsky and L. Abrams, the plaintiffs in this action, and at the same time the policy upon which this suit was brought was assigned to the plaintiffs. The bill of sale transferring the property was executed by Wilkins in the office of Clinton Dodge, an attorney in Oakland. Mr. Jeffress, who was confined to his bed, had previously signed it.

After the execution of the document Abrams requested Wilkins to call at the office of John F. Stromberg & Co. to give notice of the sale of the property and to arrange for the transferring of the insurance policy. The policy had been in Jeffress' custody and because of his serious illness (he died three days later), it could not be found.

Mr. Wilkins left the meeting and went directly to the office of John F. Stromberg & Co., where he found Mrs. Stromberg in charge. There is a sharp conflict between the testimony of Wilkins and that of Mrs. Stromberg as to the ensuing conversation between them. Wilkins' story is best told by the record:

"Q. What conversation did you have with her at that time? A. I asked if Mr. Stromberg was in and she said 'No,' that he was out of town for a few days. I had never

met the lady, but she said, 'I am Mrs. Stromberg. Is there anything you want attended to?' And I told her that Mr. Jeffress and I had sold our excelsior plant and Mr. Stromberg was carrying the insurance papers and it would have to be changed and Mrs. Stromberg said, 'Being that Mr. Stromberg is out of town' she was there conducting the business and she would attend to it and see if it was all right. Then I said to Mrs. Stromberg, knowing that there was something due on the policy, I said to Mrs. Stromberg, 'I wish you would figure out and tell me how much we owe on that policy.' And she figured it out and gave me—wrote it down on a card for me and gave me the card.

"Q. Did you tell Mrs. Stromberg to whom you and Mr. Jeffress had sold the property? A. Yes, sir.

"Q. What did you say? A. How is that?

"Q. What did you say to her? A. I told her that we had sold the excelsior plant to Mr. Abrams and Mr. Limsky at San Francisco.

"Q. What did she say? A. Well, I don't know that she said anything at that time.

"Q. She never said that it would be all right?

"Mr. Riley: Now, pardon—now wait. I ask counsel not to make suggestions and testify for the witness. He knows better than that. It is not right to put the words in his mouth.

"The Court (to Mr. Hayes): You may suggest it without making it quite so leading.

"Mr. Hayes: Q. What did Mrs. Stromberg say throughout the entire conversation?

"The Witness: I don't get that right.

"Q. What did Mrs. Stromberg say after you had told her you had sold this property to Mr. Limsky and Mr. Abrams and that the policy would have to be transferred? A. She said she would speak to Mr. Stromberg when he came in and that it would be all right."

In addition to the direct evidence of Wilkins above quoted, defendant placed in evidence an affidavit of Wilkins. There is a dispute as to the purpose for which the affidavit was used. Defendant contends that it was used only for the purpose of impeachment, and plaintiffs say that the record shows that the affidavit was offered and received in evidence

by stipulation and was therefore in evidence for all purposes. Without passing upon the point, suffice it to say that Wilkins stated in his affidavit that he called upon Mrs. Stromberg and notified her of the sale of the property and the transfer of the insurance policy covering same; "that he told Mrs. Stromberg that J. V. Jeffress, his partner, is sick in bed and the policy has been mislaid; that Mrs. Stromberg told him 'it was all right, the policy will be transferred.'"

When called to the witness-stand by defendant, Mrs. Stromberg denied the statements made by Mr. Wilkins, that she told him that her husband, Mr. Stromberg, was out of town, that Mr. Wilkins had told her the property was sold or anything about the sale of the property. Mrs. Stromberg further testified that when Mr. Wilkins came into her office he introduced himself and said he was a partner of Mr. Jeffress, and "he wanted to know the earned premium of this policy." "I calculated it on a slip of paper," said the witness, "and he asked me to write it down on a card for him which I did and he asked me the number, the amount, and what it covered. I put this down on a card also, and that was all." A written memorandum made at the time by the witness showed that the date of Mr. Wilkins' call was April 9, 1919; that she calculated the earned premium from April 9, 1918, to April 9, 1919, and that it amounted to $70.224.

On April 16, 1919, the property was completely destroyed by fire. Immediately after the fire the defendant disclaimed any interest in the policy and stated that it was inoperative because of the transfer to the plaintiffs and that it recognized no liability thereunder.

The record further shows that Wilkins and Jeffress called upon Mr. Stromberg and asked for an extension of time of payment of the insurance premium. Mr. Wilkins heard Mr. Jeffress make the remark that he would like to have the premium run until the property was sold, and then that the earned premium would be paid. Mr. Stromberg informed Jeffress that "he would carry the policy with the understanding that if the plant was sold that the policy would be terminated and the earned premium paid."

Mr. Dodge had for some time prior to the sale acted as the attorney for Wilkins and Jeffress; thereafter he represented

the interests of Wilkins and also the estate of his late part-
ner; it was one of Dodge's duties, under the instructions of
Wilkins and Jeffress, to pay all bills approved by Wilkins,
Mr. Jeffress being sick in bed.

Wilkins and Jeffress had been contemplating sale of the
excelsior plant for some time, because of the serious illness
of the latter. Mr. Dodge represented all parties in the
transfer of the property from Wilkins and Jeffress to
Limsky and Abrams.

Mr. Stromberg did not learn of the transfer of the
property until April 16th, when he was informed of a
change of ownership by Mr. Dodge. Mr. Dodge was ex-
pected to pay the premiums of all insurance policies. Mr.
Stromberg called upon Mr. Dodge in connection with the
insurance on April 15th and had a conversation with him
about it. Subsequently and on the same day Stromberg
addressed a letter to Mr. Dodge with regard to the insurance.

Defendant makes eight specifications of error upon rulings
of the trial court in the admission or exclusion of evidence.
We will proceed to a consideration of those assignments re-
lating to the exclusion of evidence because we think they go
to the vitals of the controversy, the crux of which is to be
found in the issue of oral waiver.

Repeatedly counsel for the defendant sought to get before
the jury the circumstances under which the policy was is-
sued. To all questions asked attempting to elicit such in-
formation objections were sustained. We quote from the
record:

Mr. Stromberg on the witness-stand:

"Q. Did you have a conversation with Mr. Jeffress with
regard to this insurance or with regard to the property on
which this insurance was had after the issuance of the policy
in suit? A. Yes, sir. . . .

"Q. State what that conversation was, will you, if you
can?"

To which an objection was sustained.

"Mr. Riley: Q. Did you have any conversation with Mr.
Jeffress with regard to the property covered by the policy
in the month of March, 1919, in regard to what his condition
was—I will make it a little more of a leading question. Did

he at any time prior to April 9, 1919, say anything to you with regard to who would attend to his business?''

Counsel explained to the court that it was his purpose to show that Mr. Dodge was the agent for Wilkins and Jeffress in insurance matters.

An objection was sustained.

''Mr. Riley: Very well. Did you call on Mr. Dodge at any time in connection with this insurance? A. Yes, sir.

''Q. When? A. April 15, 1919.

''Q. Will you state what conversation you had with him at that time with regard to this insurance?

''Mr. Levy: We object to that on the ground that it is incompetent, irrelevant and immaterial and not binding upon the plaintiff.

''The Court: Objection sustained.

''Mr. Riley: We offer at this time, if the court please, to show that Dodge acted as the agent and representative of Wilkins and also as representative of the other partner, and did at that time request Mr. Stromberg to send him a bill for the earned premium on this policy of insurance.

''Q. Did you thereafter send any communication to Mr. Dodge with regard to the insurance in this matter? A. Yes, sir.

''Mr. Riley: We call for the production of the letter.''

The letter was produced and offered in evidence. It was marked as an exhibit in the case but the trial court sustained an objection excluding it from evidence. The letter is as follows:

''Letter-head of Scottish Union & National Insurance Company.

''Oakland, Cal., April 15, 1919.

''Mr. Clinton G. Dodge,

''Attorney at Law,

''Union Savings Bank Bldg., Oakland, California.

''Dear Sir:

''Re: Claim against James V. Jeffress and W. T. Wilkins.

''I called on you this morning regarding an earned premium due on policy #4893867 to date which policy was issued to James V. Jeffress & W. T. Wilkins on December 19, 1918, for the sum of $3,500 at a premium of $231.00 and

on which no payment has been made. The earned premium to date amounts to $75.05 as per inclosed bill.

"Trusting you will give this matter your kind attention, and thanking you in advance, I remain,

"Very truly yours,

"John F. Stromberg."

The importance of all of this evidence is manifest when it is remembered that the letter was sent to Mr. Dodge on April 15th, the day before the fire; that the policy had been originally issued and delivered to Wilkins and Jeffress, the premium unpaid; that the question of earned premium figures prominently in the testimony; that when Wilkins and Jeffress asked for an extension of time of payment of the premium Stromberg told Jeffress that his company would continue to carry the policy with the understanding that if the plant was sold the policy would be terminated and the earned premium paid; that it was a part of attorney Dodge's duties as the representative of Wilkins and Jeffress to pay the premiums on insurance policies, and that defendant offered to show that attorney Dodge, acting as agent for Wilkins and Jeffress, had asked of Stromberg a bill for the earned premium.

At the outset, when defendant sought to introduce evidence which we think, under the issues, was relevant and material, the objection was made that it was "an attempt to vitiate the terms of a written instrument by parol testimony." Thus was the trial court led into error. The issue before the court and jury was (quoting the language of the complaint): "That at the time of said assignment of said property and policy to plaintiffs, said Wilkins, at the request of plaintiffs, informed and notified said Edith Stromberg, acting in her capacity as agent of defendant as aforesaid, that he and said Jeffress had sold said property and had sold and assigned said policy to J. H. Limsky and L. Abrams, the plaintiffs herein, and that said policy was lost. Said Edith Stromberg then and there, acting in her said capacity as agent of defendant and on behalf of said defendant, verbally consented to said sale and assignment of said property and policy and verbally waived the provision in said policy that said policy should be void if assigned before a loss

unless otherwise provided by agreement indorsed thereon or added thereto.''

[2]    The question of a verbal waiver was the principal issue and the whole case was tried upon that theory. No attempt was made to change any of the provisions of the policy, other than with reference to its assignment. The question whether or not there was a verbal waiver could in nowise affect the validity of the policy or its terms. Consequently defendant was entitled to show all of the facts and circumstances arising both before and after the fire, relating to the alleged sale and notice thereof, and to the assignment of the policy. If authority is needed to sustain this view, it will be found in *Steil* v. *Sun Ins. Office,* 171 Cal. 795 [155 Pac. 72], cited by defendant. We are of the opinion that the trial court's rulings in the premises constitute prejudicial error. We deem it unnecessary to pass upon other points.

The judgment is reversed.

Tyler, P. J., and Knight, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 17, 1924.

All the Justices concurred.