LINCOLN NAT. LIFE INS. CO. v. MATHISEN.

No. 10879.

Circuit Court of Appeals, Ninth Circuit.

June 29, 1945.

Rehearing Denied Aug. 6, 1945.

Chandler P. Ward, of Los Angeles, Cal., for appellant.

Birger Tinglof and John W. Eagle, both of Los Angeles, Cal., for appellee.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the District Court in an action to cancel a life insurance policy issued on the life of Ralth N. Mathisen, in favor of his wife, appellee herein. The lower court denied relief and entered judgment for appellee for the amount of the policy with interest and costs.

Sale of the policy was negotiated by one Sweet, a soliciting agent or broker-solicitor, on a one-case employment basis. Appellant never dealt with Mathisen nor did its regular officers or agents ever come in contact with him. All matters in connection with the delivery of the policy and collection of the required premium were left to and handled exclusively by Sweet.[1]

Application for the issuance of this policy was signed by Mathisen March 15, 1943. He was medically examined the same day by appellant and found to be in good health. The policy was later issued and delivered to him through the mail by Sweet. It is claimed by appellant that at the time of delivery of the policy and payment of premium thereon, Mathisen was not in good health and this fact was not disclosed to appellant by Sweet or Mathisen. Mathisen died on May 12, 1943. The application contained certain provisions relied upon by appellant as sufficient to invalidate the policy under conditions which it claims were disclosed by the evidence.[2]

Appellee claims that appellant, company, by allowing Sweet to exclusively handle all matters arising out of the solicitation, de-

---

[1] Sweet, as a broker-solicitor, had presented 87 applications for life insurance to appellant through its local office. Approximately a year after Mathisen's death he was still permitted to solicit insurance for appellant and retained the confidence of its local agent.

[2] "I expressly agree on behalf of myself and of any person who shall have or claim any interest in any policy issued on this application * * * as follows:

"1. * * * This application * * * and any policy or policies issued in consequence thereof shall constitute the entire contract of insurance and the Company shall not be bound in any way by any statements, promises or information made or given by or to any agent or other person at any time unless the same be reduced to writing and submitted to the Company at its Home Office and made a part of such contract. Only the President, a Vice-President, a Secretary or an Assistant Secretary may make, modify or discharge contracts or waive any of the Company's rights or requirements, and then only in writing.

"2. The insurance hereby applied for shall not be considered in force until a policy shall have been issued by the Company * * * and said policy manually received and accepted by me, subject to all the provisions therein contained, during my good health, and the first premium paid, * * * ; except that if the full first premium is paid in advance to an authorized agent of the Company while I am in good health and the receipt on the form attached hereto delivered, then the liability of the Company shall be as stated in such receipt." (Appellant throughout denies that it waived these terms and asserts that the policy never became an effective contract of insurance.)

livery of policy and collection of the required premium thereon, and to remain the sole intermediary between Mathisen and the company, up to the time of Mathisen's death, thereby made Sweet its agent and held him out to be such, with sufficient authority to waive the terms of the insurance contract outlined in footnote 2, to the extent of the waiver of such terms found by the court to have been given by Sweet for and on behalf of the company. Appellee also claims that Sweet was at all times advised of the condition of Mathisen's health; that after April 4th or 5th Mathisen merely suffered some mild physical discomfort up to April 28, 1943 when he suddenly suffered a hemorrhage of a serious character; that on this last-mentioned date the appellant was in possession of Mathisen's check in full payment of the required first full premium due on the policy; that Sweet being possessed at all times of all the facts respecting the state of Mathisen's health, this knowledge was thereby knowledge of appellant and by reason of this fact it is estopped from asserting the invalidity of the contract of insurance.

Appellant denies that Sweet possessed any authority to waive the terms of the insurance contract or to receive information or disclosures regarding the health of Mathisen; that he made no such disclosures to the appellant; that disclosure of health facts was lawfully required and failure of Mathisen to disclose defeats estoppel as claimed by appellee. Appellant denies that it waived the terms of the insurance contract. On these issues, the case went to trial.

Certain material facts were stipulated, as follows: Mathisen was examined by plaintiff's medical examiner on March 15, 1943 and was then in good health; he made a trip to Mexico on March 17, 1943 and returned to his home on April 4, 1943; that a post mortem examination was had on the body of Mathisen after the remains had been embalmed; that the insurance policy involved in this action was delivered by mail; that certain provisions in the policy, claimed by appellee to have been waived by appellant, were not physically deleted from the policy nor was any such waiver endorsed on the policy or added to it nor were any such waivers signed by officers of appellant authorized to do so; that the check of Mathisen to appellant in payment of the premium required was dated April 27, 1943 and on that date was mailed to Sweet and on April 28, 1943 was received by appellant and accepted and cashed; that at no time between April 4th and May 12, 1943 did Mathisen or his wife (the beneficiary) or his secretary notify or attempt to notify any person connected with appellant, other than Sweet, either that Mathisen was sick at all, or concerning the nature of his illness; that between these dates mentioned, neither Mathisen nor his said wife nor said secretary reduced to writing or submitted to the Home Office of appellant, a written statement that Mathisen was sick, or concerning the nature of his illness; that at no time did Mathisen or anyone for him, procure or obtain a writing signed by the proper officers admitting knowledge or accepting notice, either of the fact of the sickness of Mathisen or the nature of his illness, or any written endorsement or notation on the policy with reference either to Mathisen's illness, or the nature thereof or the appellant's written acknowledgment of notice or knowledge thereof; that at no time prior to the death of Mathisen on May 12, 1943, did any person at the Home Office of appellant have any actual (as distinguished from constructive) knowledge that Mathisen, at any time subsequent to his medical examination on March 15, 1943, had been or was sick; that Sweet acted as soliciting agent of appellant in obtaining the application of Mathisen and he was not one of the officers of appellant authorized to waive any of the terms and provisions of the policy; that Sweet was the only person selected by appellant to deal with Mathisen in the procurement of the application, the policy and premium payment required, and that Mathisen never had called to his attention the commission agreement between Sweet and appellant or to the "Agent's Manual" or "Rate Book" employed by appellant in its relations with Sweet.

The findings of the trial court appear to cover all of the controverted issues of fact. It found as facts that Sweet was the sole agent of the company and the only person selected by it (other than the medical examiner) to deal with Mathisen in his relations with appellant; that on April 10, 1943, Sweet unconditionally sent the policy to Mathisen with a letter of transmittal which stated that the policy covered the insurance purchased by Mathisen and the premium could be remitted at the convenience of Mathisen; that on April 14, 1943 the policy was by appellant uncondi-

tionally delivered to Mathisen and manually received and accepted by him and was in his possession until his death; that on April 27, 1943 Mathisen paid the full first year's premium on the policy which was received and accepted by the appellant April 28, 1943 during the "good health" of Mathisen.

The court further found that Mathisen did not contract typhoid fever on April 5, 1943; that he was not thereafter continuously disabled thereby or that he died of this disease or that he was uninsurable at the date of the delivery of the policy (April 14, 1943) or that the policy was not manually received or accepted by Mathisen during his "good health". Further findings are that at all times from March 15, 1943, when Mathisen was medically examined and found to be in "good health", he remained in "good health" until a time subsequent to the payment, receipt and acceptance of the first year's premium; that from April 4, 1943 until April 28, 1943, Mathisen was indisposed with a slight sickness which had no serious bearing on his general health but subsequently was stricken with a serious malady the exact nature of which is still undetermined[3] and from which he died on May 12, 1943; that from April 5, 1943 until May 12, 1943, Sweet kept himself fully informed as to the illness of Mathisen and as to changes in the condition and health of Mathisen and was fully advised thereof by Mathisen; that at no time was there any deception upon or concealment from appellant by Mathisen or any other person as to his illness or condition of health, or changes of health, or the circumstances under which the policy was delivered and premium paid and accepted; that at no time was there any collusion between Mathisen and any other person to defraud appellant.

Further material findings were that Sweet had authority, on behalf of appellant, and it was his duty to deliver the policy to Mathisen and receive the premium payment therefor under the described conditions; that appellant empowered Sweet to determine whether or not the policy should be delivered to and manually received and accepted by Mathisen as an effective insurance contract, and to determine the condition of health, or any change in health, of Mathisen, at the time of de-livery of the policy and its manual receipt and acceptance by Mathisen and also to waive any "good health" requirement and the time of premium payment requirement stated in the policy and application therefor; that Sweet did waive such "good health" and time of premium payment requirements with respect to Mathisen; that each and all of the allegations in appellant's amended complaint not admitted in the answer or stipulations of facts (above referred to) are untrue. Also, that "on April 14, 1943, the policy was by appellant unconditionally delivered to Mathisen and manually received and accepted by him."

The California District Court of Appeal (Kamischer v. John Hancock Mut. Life Ins. Co., 1 Cal.App.2d 629, 37 P.2d 126) (see also New Cal. Digest, 1941 Supp. § 83 and cases cited therein) has held that even though a policy purports to provide that it shall not be effective unless the first premium installment has been paid before death, the fact that the application for such insurance is, by its terms, made a part of the policy does not change the effectiveness of Section 2598 of the California Civil Code, now Section 484, Insurance Code, St. 1935, p. 509 which provides that an acknowledgment in a policy is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulations therein that it shall not be binding until the premium is actually paid. The policy issued to Mathisen contained a clause reading as follows: "This insurance is granted in consideration of the payment of $486.25, the receipt of which is hereby acknowledged * * *." In the Kamischer case, the court held that this language is in effect an acknowledgment of the receipt of the premium, and by reason of the code provisions the insurance company was precluded from the defense that the premium was not paid. Cf. Jefferson Standard Life Insurance Co. v. Munthe, 9 Cir., 78 F.2d 53.

■ On the findings, above referred to, the court concluded as a matter of law that appellant was not entitled to the relief sought; that it was estopped and precluded from claiming that the insurance policy was not effective as an insurance contract and that appellee was entitled to judgment on the policy on her counter-claim.

---

[3] Apparently the court could not find any conclusive evidence as to the presence of typhoid fever during the period from April 5th to April 28th. The medi-cal testimony regarding the symptoms was inconclusive on the exact cause of the hemorrhages which led to the death of Mathisen.

Whatever doubts reside in the record by reason of sharp conflicts over the facts had to be resolved by the trial court. Its findings are ample to cover controverted issues of fact. Unless they are clearly erroneous they must stand if they are supported by competent evidence of probative value. There is evidence of this character. See Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ On conflicting testimony, including that of medical experts, the court found as a fact that Mathisen was "insurable" from the standpoint of "good health" on April 14, 1943, on which date the policy was unconditionally delivered and manually received and accepted by him. This being determined as a fact by the court, the rule of law announced in the Kamischer case, supra, applies so far as the requisites of premium payment are concerned. It is clear from the record that the court was of the view that on the issue of "good health" as of the delivery and acceptance date, the cases of Wills v. Policy Holders Life Ass'n, 1936, 12 Cal.App.2d 659, 55 P.2d 920, and Burr v. Policy Holders Life Ins. Ass'n, 1933, 128 Cal.App. 563, 17 P.2d 1014 were decisive under California law and required the health issue to be resolved against appellant.

Hackman, who was associate general agent of appellant, had authority to and did employ Sweet to handle all matters in connection with the Mathisen application and subsequent delivery of the policy. The record clearly indicates that Mathisen was not advised at any time of the nature of Sweet's contractual relations with appellant or the extent of his authority as an agent of appellant. In dealing exclusively with Sweet under these conditions, it may be fairly assumed that Mathisen regarded him as having whatever authority was necessary to consummate the entire insurance transaction. Hackman testified that when he turned the Mathisen policy over to Sweet on March 29th he left everything to Sweet after that, and that after so turning the policy over to Sweet, and pursuant to company rules, it was up to Sweet to decide whether or not delivery should be made to Mathisen.[4]

■ The trial court held, and we agree, that Sweet was, under the facts disclosed by the evidence, not merely and solely a soliciting agent in dealing with Mathisen, but on the contrary had been selected by appellant as the sole intermediary between Mathisen and appellant, and as such, empowered to determine whether or not the requirements of the contract had been met. As indicated herein, it was part of Sweet's duty, under his arrangement with the company, to deliver the policy when he satisfied himself as to the health of Mathisen, all as more fully appears from the testimony of Hackman. When Sweet made delivery upon satisfying himself, he met the conditions outlined by Hackman. The record discloses that Hackman (who so testified) did not call attention to or raise any objection or so-called interference with Sweet over his violation of the rules of the company when on May 11th he discussed with Sweet the matter of mailing the policy prior to receipt of premium payment. When interrogated as to whether he (Hackman) considered such mailing a violation of the rules of the company he replied, "Well, that is a difficult question to say yes or no to".

■ In the face of the conflicting testimony we accept the finding that the policy was delivered and accepted by Mathisen on April 14, 1943. In light of the authority conferred on Sweet to decide the health question at the time of delivery and acceptance on April 14, 1943, and in light of the further finding of the court that on this delivery and acceptance date, Mathisen was insurable from a health standpoint, under the rule in the California cases above

---

[4] "Q. Well, Mr. Hackman, it is the agent himself, then, who decides the health condition of the insured at the time of delivery of the policy, whether or not it is a prepaid policy or a non-prepaid policy, isn't it? A. Yes sir: That is true

* * * * * *

"Q. [to Hackman] Was it your interpretation of Mr. Sweet's statement to you on May 11th that he had violated the rules of the company in one particular only of mailing the policy? A. That is right.

"Q. You knew then that he had received payment for the policy after he had mailed it, didn't you? A. That is right.

"Q. You did not consider that a violation of the rules of the company, did you? A. Well, that is a difficult question to say yes or no to.

* * * * * *

"Q. You knew also that he had received the premium payment for the full annual premium of this policy after he had mailed it, didn't you? A. That is right."

cited, we are of the view that the policy then became a binding contract of insurance. In the delivery of the policy, Sweet exercised the authority vested in him by Hackman, the associate general agent of appellant who was in charge of the brokerage department of the company in that area and thus Sweet acted for appellant under the authority so conferred on him, in determining whether or not the policy should be delivered under the conditions then existing. We approve the opinion expressed by the trial court that on the issue of health this case is governed by the California rule announced in the Wills and Burr cases, supra. In the light of these cases we do not think that the cases of New York Life Ins. Co. v. Gist, 9 Cir., 63 F.2d 732; Subar v. New York Life Ins. Co., 6 Cir., 60 F.2d 239; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 are applicable.

Judgment affirmed.