[Civ. No. 11247.   Second Appellate District, Division Two.—February 16, 1937.]

NATIONAL AUTOMOBILE INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA and GUY C. PEALER et al., Respondents.

C. W. Bowers and Letus N. Crowell for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondent Industrial Accident Commission.

CRAIL, P. J.—This is a review of an order made by the Industrial Accident Commission finding that the petitioner was the insurance carrier covering the risk of respondent Guy C. Pealer and an appeal from the "Order on Rehearing" and all the orders leading up to said final order. The contentions of the petitioner are: (1) That the policy of insurance was null and void because the premium was not paid as provided in the policy, (2) that the time and place of payment of the premium was not waived by the fact that the broker delivered the policy, (3) that the broker, Ramelkamp, was not the agent of petitioner, (4) that the petitioner's policy was never in force because the Travelers' policy covering the same risk had not been canceled, and (5) that the

policy was void *ab initio* because of fraud, misrepresentation and concealment. This case was before the Commission on several occasions and finally Commissioner Charles A. Son reviewed the case and personally wrote a memorandum entitled, "Decision on Rehearing". This memorandum sets forth the facts and issues in the case and the law applicable thereto with clearness and precision. We therefore adopt the major portion of his opinion as the opinion of this court.

"The injury occurred on October 28, 1935. Defendant Foster, doing business as Custombuilt Trailer Manufacturing Company, was the employer, whose insurance matters in his office were handled by his manager Salisbury and through said manager the business was referred to and handled by one Ramelkamp, a licensed insurance broker, who also held and holds a general agency contract with defendant Travelers Company.

"Defendant Travelers issued and delivered a compensation policy to Foster, covering the period from July 18, 1935, to July 18, 1936, which policy Foster delivered for cancellation to Ramelkamp at the latter's request on October 24, 1935, at which time Ramelkamp delivered to Salisbury a policy of defendant National Company dated October 24, 1935, and covering the period October 26, 1935, to October 26, 1936, which policy defendant National Company issued and delivered to Ramelkamp for delivery to insured under the following circumstances:

"On October 21, 1935, Ramelkamp went to defendant National Company and there talked with a Miss Woodruff and told her he had a case in mind which he was not sure the National Company would want to consider, but he would give her the information. He told her that Travelers wanted to get off this risk because of losses. She said she would take the information (application) and he would hear from it. The application contains the question and answer, 'Has similar insurance been cancelled by any insurance carrier during past year? None.'

" . . . Ramelkamp 'phoned the National on October 24 and was told that the policy has been issued, and he then received it and took it to Foster's, and there to Salisbury, said, 'Here is a policy. I want the Travelers policy' or words to that effect.

"Salisbury said, 'Is this (new) insurance in force,' or 'does it cover us', or something to that effect. Ramelkamp told him that it did. Salisbury thereupon delivered to Ramelkamp the Travelers policy, which Ramelkamp turned over to the Travelers. At the same time Ramelkamp called Salisbury's attention to the 'Red Rider' on the National policy which is in words and effect as follows:

" '. . . as a condition precedent, this policy is null and void unless the total initial premium stated herein is paid by the broker or assured to the National Automobile Insurance Company at its office in Los Angeles, California, on or before November 8, 1935.'

"On November 7, 1935, Ramelkamp went to Foster's and received a check for $120.00, the full amount of the premium; cashed the check, and on the 7th or 8th of November Ramelkamp gave to National at its office his own check for $102.00, having deducted his commission of $18.00. The National Company's ledger sheet is in evidence, showing this charge, billed to Ramelkamp and stamped:

" 'Rec'd November 9, 1935, at 11:50 a. m. and Paid Nov. 12, 1935. Payment stopped.'

"On November 9th Ramelkamp received a letter from National Company, dated November 5, which letter had been incorrectly addressed, which accounted for its belated delivery. The letter which is in evidence is as follows:

" 'We have just checked experience in this case and find that it has not been satisfactory. We therefore regret to advise that we must ask you to pick up this policy and return same to us for cancellation within five days.'

"Upon receipt of this letter Ramelkamp, not wanting the National to cash his check and then hold up the refund until an audit was made, which experience he had had with another company, went to his bank and stopped payment on his check.

"On November 15, 1935, defendant National sent a letter to Ramelkamp to the effect that the premium not having been paid 'to this office on or before November 8, 1935, that the policy was null and void in accordance with its terms'.

"Neither Foster, the insured, nor his office manager Salisbury knew anything about any of the above dealings of Ramelkamp with either of these companies.

"The injury, which has been stated occurred on October 28, 1935, and which was 'small finger on right hand cut at

second joint, on a joiner plane', although it caused applicant to at once leave work and go to a hospital, does not appear ever to have been called to attention of defendant Travelers, and not to be known to defendant National until November 19, 1935.

"The injury resulted in removal of small finger on right hand at knuckle joint. Application for compensation was filed with this Commission November 25, 1935. The above facts, largely documentary evidence, fully cover all the specific issues raised in this case. . . .

"The controlling question, therefore, is: Was the National policy in effect, and that question turns on (1) the authority of Ramelkamp to collect the premium, so as to charge National with its receipt; and (2) was there a *false* warranty in the application.

"We hold (1) that Ramelkamp had such authority; (2) that there was no falseness in the warranty, and as a result of such holding that award shall run against defendant National Company . . . As authority for such holdings the following points and authorities are cited:

"(1) The fact that Ramelkamp came to applicant armed with the defendant's policy duly issued by the defendant company together with a bill or statement of the premium due thereon, taken in connection with the right of Ramelkamp to deduct his commission before remitting to defendant, immediately gives rise to the inference that Ramelkamp was authorized to deliver the policy and to collect and receipt for the premium. (*Frasch* v. *London & Lancashire Fire Ins. Co.*, 213 Cal. 219 [2 Pac. (2d) 147]).

"In the *Frasch* case are cited, 'merely to indicate the trend of the authorities', the cases of Arthurholt and Terry, from which, because they are on all fours with the instant case, we give a full quotation, taken from the comprehensive note in 85 A. L. R. 749, entitled, 'Person to whom payment of insurance premium may be made (or tendered) so as to charge insurer' and to which note reference is made for further authorities. (*Arthurholt* v. *Susquehanna Mut. Fire Ins. Co.*, [1893], 159 Pa. 1 [28 Atl. 197, 39 Am. St. Rep. 659]; *Terry* v. *Provident Fund Soc.*, [1895], 13 Ind. App. 1 [41 N. E. 18, 55 Am. St. Rep. 217].) [Quotation omitted.]

"In accordance with the foregoing authorities, the defendant National Company must be taken to have waived the

condition precedent in the red rider, i. e., payment to the company at its office, and to be estopped to deny Ramelkamp's authority to bind the company by collecting the premium. See also the reasoning in: *Vierra* v. *New York Life Ins. Co.,* 119 Cal. App. 352 [6 Pac. (2d) 349]; *Bankers' Indemnity Ins. Co.* v. *Industrial Acc. Com.,* 4 Cal. (2d) 89 [47 Pac. (2d) 719]; *Schramm* v. *Industrial Acc. Com.,* 16 Cal. App. (2d) 475 [59 Pac. (2d) 858]. And that the liability rests on an estoppel, see *Lycoming Co.* v. *Ward,* 90 Ill. 545.

■ ''(2) There was no falseness in the question and answer in the application (see above), because at the time that the answer was made defendant Travelers Company's policy was in force and was not canceled until later delivered up to Ramelkamp for cancellation, under the ·circumstances outlined in the above statement of facts. ■ Asking Ramelkamp to 'pick up' the policy simply means asking him to try to get the insured to *voluntarily* surrender it for cancellation, but is not cancellation, because cancellation can be made only in accordance with the 10 day notice, etc., required both by the terms of the policy and by California Statutes.

''The foregoing disposes of all questions raised as to the validity of the coverage of the National Company policy. It would unnecessarily prolong this opinion to discuss the many corroborative facts as to the authority of Ramelkamp, in collecting the premium, to bind the National Company, such as its bookkeeping entries, its failure to question anything that Ramelkamp did except cancellation of his own check, and its conduct subsequent to the injury and after it learned thereof.

■ ''In conclusion, the following California cases are cited to show that 'evidence tending to show waiver is favorably regarded, and forfeiture will be avoided upon any reasonable showing': *Murray* v. *Home Benefit Life Assn.,* 90 Cal. 402 [27 Pac. 309, 25 Am. St. Rep. 133]; *Knarston* v. *Manhattan Life Ins. Co.,* 140 Cal. 57 [73 Pac. 740]; *Raulet* v. *Northwestern Natl. Ins. Co.,* 157 Cal. 213 [107 Pac. 292]; *Vierra* v. *New York Life Ins. Co.,* 119 Cal. App. 352 [6 Pac. (2d) 349].''

The orders are affirmed.

Wood, J., and McComb, J., *pro tem.,* concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 15, 1937.