BURCH, J.
 

 The complaint in this action alleges plaintiff was insured by defendant on March 3, 1946, against certain damages to plaintiff’s automobile, and that such damages were incurred by him in an accident in which his automobile was involved on January 17, 1947; that such insurance was operative “... . during the term between March 3, 1946 and September 3, 1946. For a valuable consideration it was agreed between said parties in writing that the term of such policy, as aforesaid, should be extended from September 3, 1946 to March 3, 1947; ...”
 

 The answer admits the policy was issued but denies its extension for the term September 3, 1946, to March 3, 1947, and denies the insurance was effective on the date of the accident. Judgment went for defendant and plaintiff appeals.
 

 The policy makes provision for its term and renewal option as follows:
 

 “Term—The term of this Policy shall be From Mar. 3, ’46 To Sep. 3, ’46 and for such succeeding terms of six months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by the Company.”
 

 Plaintiff neither paid nor promised payment of the renewal premium until February, 1947, after the accident. He had arranged with the local agent, Mr. Reineman, for payment by Mr. Reineman of the original premium and liquidated this obligation to Mr. Reineman after the accident. Thirty days before the renewal premium was to be due on September 3, 1946, the company mailed a notice thereof to plaintiff. On the due date of September 3, 1946, the company mailed plaintiff a notice of a 10-day extension of the option. Not receiving the premium or other communication from plaintiff, the company lapsed the policy on its records and closed its account with plaintiff.
 

 The relationship of insured and insurer terminated .and the insurance expired and became nonoperative under these facts on September 13, 1946.
 
 (Upton
 
 v.
 
 Travelers Ins. Co.,
 
 179 Cal. 727 [178 P. 851, 2 A.L.R. 1597].) Notwithstanding these facts and the lapsing of the insurance, through an error in the defendant’s bookkeeping department
 
 *Supp. 858
 
 there was mailed out to plaintiff on September 16, 1946, a form of receipt for the renewal premium which had been prepared along with the notices above referred to on July 24, 1946. Plaintiff contends that this erroneous receipt thus in his possession established his right to insurance coverage as a matter of law by reason of the provisions of section 484, Insurance Code (formerly Civ. Code, §2598). That section provides:
 

 “An acknowledgment
 
 in a policy
 
 of the receipt of premium is conclusive evidence of its payment,
 
 so far as to make the policy binding,
 
 notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid.” (Emphasis ours.)
 

 If plaintiff's receipt were valid, the contention would be difficult to meet. So, too, if there had been any consideration therefor or had it been used to evidence the parties’ assent to an agreement. The proof, however, which supports the judgment and viewed in that light, is to the contrary. The section is inapplicable because at the time of the inadvertence there was no insurance, and the mistake, as a mistake, affected no legal relations of the parties.
 

 It was prepared for future use as a mere form. Until after the accident only plaintiff was aware of its possession by him. Plaintiff took no steps to discover the truth of the assumption to which he testified, to wit: that Mr. Reineman, the agent, had voluntarily and gratuitously paid his premium for him. But the assumption of one party has never been held to fulfill the essential elements of a contract, even where a common law relationship exists in fact.
 
 (Socol
 
 v.
 
 King,
 
 36 Cal.2d 342, 346 [223 P.2d 627].) Here the relationship terminated when the option expired.
 
 (Upton
 
 v.
 
 Travelers Ins. Co., supra.)
 
 The Insurance Code, including section 484, does not establish the relationship where, in fact, it does not exist. It but regulates the relationship where the parties themselves create it.
 
 (New York Life Ins. Co.
 
 v.
 
 Gist,
 
 63 F.2d 732, 734.) The unconditional delivery of the policy was a factor in the cases upon which plaintiff relies.
 
 (Farnum
 
 v.
 
 Phoenix Ins. Co.,
 
 83 Cal. 246 [23 P. 869, 17 Am.St.Rep. 233] ;
 
 Palmer
 
 v.
 
 Continental Ins. Co. of New York,
 
 132 Cal. 68 [64 P. 97];
 
 Masson
 
 v.
 
 New England Mut. L. Ins. Co.,
 
 85 Cal.App. 633 [260 P. 367];
 
 Lincoln Nat. L. Ins. Co.,
 
 v.
 
 Mathisen,
 
 150 F.2d 292.)
 

 The business of insurance depends upon premiums.
 
 (Methvin
 
 v.
 
 Fidelity Mut. L. Ass.,
 
 129 Cal. 251, 257 [61
 
 *Supp. 859
 
 P. 1112];
 
 Burton
 
 v.
 
 Columbian Nat. L. Ins. Co.,
 
 20 Cal.App. 21, 25 [127 P. 1037] ;
 
 Schick
 
 v.
 
 Equitable L. Assur. Soc.,
 
 15 Cal.App.2d 28, 33 [59 P.2d 163], and authorities cited.) Section 484 of the Insurance Code reasonably interpreted does not thrust insurance upon parties who have not contracted for it.
 

 The inadvertence upon which plaintiff relies is insufficient to affect contractual relations between the parties. (Williston, § 1541, subsec. 1.) The mistake involved here militates against the creation of a contract. The want of consideration was properly shown.
 
 (Shiver
 
 v.
 
 Liberty Bldg.-Loan Assn.,
 
 16 Cal.2d 296 [106 P.2d 4];
 
 Royer
 
 v.
 
 Kelly,
 
 174 Cal. 70, 72 [161 P. 1148];
 
 Greer
 
 v.
 
 Los Angeles Athletic Club,
 
 84 Cal.App. 272, 276, 277 [258 P. 155]; Code Civ. Proc., § 1962, subd. 2.)
 

 Plaintiff makes the further contention that the court erred in denying his motion to amend the complaint to conform to proof by alleging that the company waived the renewal premium by mailing the receipt. For the purposes of decision, we will assume that this raises the question of equitable estoppel. As pointed out by Professor Langmaid in an article,
 
 “Waiver and Estoppel in Insurance Law in California,”
 
 20 California Law Review, pages 1 to 41, insurance cases have used the terms “waiver” and “estoppel” with less distinction than one would expect. He quotes Judge Cuthbert Pound
 
 (Satz
 
 v.
 
 Massachusetts Bond. & Ins. Co.,
 
 243 N.Y. 385, 393 [153 N.E. 844, 59 A.L.R. 606]) as follows:
 

 “The tendency on the part of the courts to treat insurance contracts as standing in a class by themselves and to protect against forfeitures invoked in defense of honest claims has led to much subtlety. As Professor Woodruff says in his preface to his ‘ Cases on Insurance,’ (2d ed. p. 5) : ‘What do they know of the law of the insurance contract who only the law of contract know?’ ”
 

 Professor Langmaid continues:
 

 “While ‘estoppel’ is a slippery enough term under ordinary circumstances, being frequently employed indifferently to cover estoppel by misrepresentation and promissory estoppel, it is found in the insurance cases to take on an even more enlarged meaning and to be inextricably interwoven with ‘waiver.’ The two terms are frequently used synonymously.”
 

 For the purpose of decision, we will assume that the motion was directed to an equitable estoppel arising by reason of
 
 *Supp. 860
 
 the negligence of the insurance company in mailing the receipt, causing the plaintiff to believe that the agent, Mr. Eeineman, had advanced the renewal premium for the plaintiff.
 

 Sometimes a receipt may create an equitable estoppel if the essential elements are present. Volume 31, Corpus Juris Secundum 298, section 85, deals with this subject. It is there said:
 

 “Receipts are not per se estoppels, but are open to explanation between the original parties and others not acting to their injury on the faith of them.”
 

 In ruling on the motion, the court was required to determine' from the record whether plaintiff acted to his injury on the faith of the receipt. There was substantial evidence both ways and the conflict was resolved in favor of the defendant.
 

 • It is true, that Mr. Grantham testified on more than one occasion that he did not make the renewal payment because he believed that Mr. Eeineman had made it for him when the receipt of September 16th came to hand. Mr. Eeineman had paid at plaintiff’s request the original premium, and plaintiff had not met his personal obligation to Mr. Eeineman on this score until after the accident. Since plaintiff had known Mr. Eeineman as a friend whom he frequently contacted in their local- community, the court well may have questioned why Mr. Grantham did not inform himself of the true fact; why the plaintiff should not have acknowledged to Mr. Eeineman his obligation; in fact, why plaintiff remained silent in the light of plaintiff’s knowledge that he had not paid the premium. Insurance policies are traditionally contracts “uberrimae fidei.”
 
 (Stipcich
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 277 U.S. 311, 316 [48 S.Ct. 512, 72 L.Ed. 895].)
 

 . • Bearing, upon plaintiff’s belief and the good faith and reasonableness of his conduct, the court was dependent upon plaintiff’s own testimony and circumstantial evidence bearing thereon. He testified:
 

 . “A. Well, getting the receipt, and dealing with Mr. Reineman as I have for years, would lead me to believe that he had went ahead and paid it for me.
 

 “Q. Well, did you so believe? A. Yes.
 

 ■ “Q. Now, had he given you credit before ? A. Yes.
 

 .. “Q. . Over how many years? A. No definite period of ¡time, just little odd things that would come up, and does yet.
 

 “Q. Had he extended you credit besides this credit that
 
 *Supp. 861
 
 he gave you in relation to this particular policy? A. You mean on policies?
 

 “Q. Yes, on other policies. A. No, I never had had any other policies from him.
 

 “Q. Well," what other kind of business was it that you had done with him, for years, that you mentioned ?
 

 “A. He figures my income tax and personal papers that way.”
 

 On cross-examination plaintiff further testified:
 

 “Q. At the time that you made application for the policy involved, on or about March 3,1946, you made no payment of a premium to Mr. Reineman or anyone else connected with the State Farm Insurance Company, did you? A. At that time I did not.
 

 “Q. And at no time from that date until February 3, 1947 did you make any payment of any money for this insurance, or offer to pay any money for it to anyone, Mr. Reineman or anyone identified with the State Farm Insurance Company, is that correct? - A. I did not offer to pay, but I saw him and made an excuse, I did not have the money, and talked with the man.
 

 “A.
 
 Well, I would meet Mm various times on other business, and him being a friend of mine, I would talk with him about it, because I didn’t want it running on.
 

 “A.
 
 No, but I see the man every once in a while and talked with him.”
 

 Again the record shows:
 

 “Q. I show you what is a statement of semi-annual net renewal premium, and ask you whether or not you were ever sent a premium notice prior to the expiration of the policy in September, 1946 ? A.
 
 Absolutely not.
 

 ‘A. No, I have never received anytMng from the company, only that card with my receipt on it.”
 

 In contrast with this testimony, the plaintiff further testified:
 

 ‘Q. Did you receive any notice that the premium was due in September, 1946? A.
 
 I received a letter telling me that the premium would be due on a certain day, just a letter typed out.
 

 
 *Supp. 862
 
 “The Court: When did you receive the letter, do you remember ? A.
 
 It was about ten days before the expiration date of the premium.”
 

 The plaintiff’s silence about the receipt for more than four months, knowing that he had not himself paid the premium, coupled with his opportunities to explain his undisclosed assumption in the face of frequent contacts with his friend, Mr. Reineman, together with the free discussion of his pending obligation for the original premium, were- all circumstances bearing upon the question of reliance.
 

 The determination of this issue in favor of the defendant is, therefore, binding on appeal. The judgment is affirmed.
 

 Turrentine, P. J., concurred.