[Civ. No. 31146. Second Dist., Div. Two. May 10, 1968.]

GLORIA PIERSON, Plaintiff and Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, et al., Defendants and Respondents.

Herbert A. Holmes, Jr., for Plaintiff and Appellant.

Meserve, Mumper & Hughes, Cromwell Warner, Jr., and Dennett F. Kouri for Defendants and Respondents.

ROTH, P. J.—Appellant, the beneficiary of a policy issued by respondent company (herein severally referred to as respondent) insuring the life of her husband, seeks declaratory relief against respondent and one Gormley to establish her right to the proceeds of the policy. Respondent asserted the policy had lapsed prior to the date of death due to non-payment of premium. Appellant appeals from a judgment in favor of respondent and Gormley.

Appellant's husband had been insured with respondent prior to application for and issuance of the policy before us.

The facts hereafter outlined are uncontradicted.

Glenn Gormley, agent for respondent, met with the Piersons (appellant and her deceased husband) to discuss insurance coverage in December of 1962. Decedent Pierson had applied for a 15-year term monthly premium policy in the face amount of $10,000, naming appellant as beneficiary. On January 17, 1963, he sent a check together with his application, to respondent for $19.81 which was to be applied in payment of the first monthly installment under the policy for which he had applied and for which he had been accepted. Respondent, however, had discontinued the applied-for policy

on December 31, 1962. In response to the accepted application, it substituted a similar policy called "Modified 15 Year Term Insurance." Gormley explained that the premium cost on the substituted policy had been reduced from $19.81 per month to $41.61 payable quarterly. The Piersons informed Gormley that they could not budget for quarterly payments and requested monthly payments. Gormley told them that the monthly premium under the modified policy was $14.27, an amount below the $15 minimum monthly premium respondent would accept, and that monthly payments would not be accepted under this policy. Although dissatisfied with the quarterly method of payment, decedent accepted the modified policy. The substituted policy dated February 1, 1963, was delivered on February 8, 1963. It specified on its face that it was in effect from February 1, 1963. The Piersons accepted the substituted policy and on March 1, 1963, sent respondent a check for $21.80, which amount added to the previous check for $19.81 equaled full payment of the first quarterly installment. The delivered policy provided that premiums were payable annually in advance on the first day of its interval of premium payment, which day for the first premium is the date of issue, in this case, February 1. The policy itself does not provide for quarterly payments. The policy provided that "Premiums are payable as provided on page 3 (which specified annual premiums) and may be paid at more frequent intervals in accordance with [respondent's] published rates and minimum-amount requirement in effect at the Date of Issue." Decedent was billed on a quarterly payment basis.

Prior to May 1, a "Notice of Premium Due" was sent to decedent for $41.61, due on May 1, 1963, for the quarter May-June-July. The policy included a 31-day grace period. The premium demanded by the notice therefore was payable between May 1 and June 1. The "grace" provision was that "Any premium, other than the first, not paid when due may, prior to the Date of Expiry, be paid within a grace period of 31 days after its due date provided premiums have been paid to that date. The policy will continue in full force during that period." On May 31, 1963, appellant mailed to respondent a check for $21.61, together with the "Notice of Premium Due." On the premium notice appellant had written "The Rest 7/1." Respondent did not return the check. On June 3 and again on June 11, Gormley visited the Piersons and told them the policy was over the grace period, but if they remitted the balance of the quarterly payment by June 15,

respondent would accept it without requiring a reinstatement form certifying to the insured's present good health. At the meeting on June 11, Gormley and the Piersons set up a meeting for June 15 between Mr. Pierson and Gormley to achieve a monthly payment schedule which Gormley had suggested could be done by increasing the face amount of the issued policy and a raise in premium from $14.27 to $15 per month. The meeting was cancelled. On July 3, decedent died from natural causes. No further payments on the policy had been made. On July 4, appellant executed respondent's proof of death form. The district manager informed her that it would probably not be accepted. On July 19 appellant received a notice of premium due for the August-September-October quarter payable August 1 in the amount of $41.61. On October 7, respondent by letter to appellant, denied liability and for the first time remitted to her the amount of the part payment theretofore made May 31.

 The question presented is whether a tender of part payment of the second quarterly premium on the last day of the grace period with a concurrent endorsement on the notice, to wit: ''Rest 7/1'' had the effect of maintaining the policy for the quarter in question.

The cases have held that acceptance of inconsistent performance, such as a partial or insufficient payment of premium under a life insurance policy, when the circumstances show equivocal or misleading conduct on the part of an insurance company in its acceptance, may be the basis of a waiver or estoppel against the company's right to demand performance according to specifications in the policy. (*Peterson* v. *Allstate Ins. Co.* (1958) 164 Cal.App.2d 517 [330 P.2d 843]; *Page* v. *Washington Mut. Life Assn.* (1942) 20 Cal.2d 234 [125 P.2d 20]; *Guerin* v. *California Western States Life Ins. Co.*, (1964) 229 Cal.App.2d 325 [40 Cal.Rptr. 344]; *Murray* v. *Home Benefit Life Assn.* (1891) 90 Cal. 402 [27 P. 309, 25 Am.St.Rep. 133].)

From the beginning of appellant's association with respondent, the payments (none of them in full) made and accepted show a pattern inconsistent with the terms of the policy and respondent's billing. (Cf. *Peterson* v. *Allstate Ins. Co., supra.*) All payments, including the original payments which was made for a different policy were part payments and all were accepted. None of them were below the monthly minimum amount, to wit: $15 which Gormley had stated was

the monthly minimum respondent would accept on any policy. The May 31st payment made with a concurrent indorsement on the premium notice "Rest 7/1' was retained by respondent, apparently on the theory of the statements by Gormley on June 3 and 11 that the grace period of the policy had been extended to June 15. Gormley at no time stated that respondent had exercised its option to forfeit the policy. He at no time offered to return the May 31 check. Instead a meeting was set up between himself and decedent for June 15 to negotiate an increase in the policy, which would result in monthly payments of $15. The meeting was not held and the May 31 check was not returned.

Acceptance of a premium by an insurance company, when it might have insisted on a forfeiture, has been held to amount to a recognition that the policy was in full force and effect (*Peterson* v. *Allstate Ins. Co., supra*) ; and to establish a waiver of the right to claim the forfeiture. (*Murray* v. *Home Benefit Life Assn., supra.*)

Retention of the check of May 31 tendered with the notice of premium payment on which was indorsed "Rest 7/1" was inconsistent with a claim that the policy lapsed on June 1, or Gormley's oral statement that it would lapse on June 15 if the balance were not paid. (Cf. *John Hancock Mut. Life Ins. Co.* v. *Markowitz* (1944) 62 Cal.App.2d 388, 412 [144 P.2d 899].)

The amount of the May 31 check, if prorated, was sufficient to keep the policy in effect until June 15, the date fixed by Gormley. The May check, however, was tendered as a part payment of a quarterly premium and not as a proration for the purpose of extending the grace period.

There is no provision in the policy for extension in this manner and there is no pretense that the Piersons agreed orally or in writing with Gormley's unilateral declaration.

Respondent, on the expiration of the 31-day grace period, had the undoubted right to insist on strict performance. It did not do so. Such failure coupled with its past conduct in respect of receiving past payment, amounts to a waiver. (*McCary* v. *John Hancock Mut. Life Ins. Co.* (1965) 236 Cal.App.2d 501 [46 Cal.Rptr. 121] ; 14 Appleman, Insurance Law and Practice 293.)

In *McCary, supra,* the court at pages 507, 508, treating an analogous situation, said :

"The Company points to the following provision in the 'late payment offer': 'By accepting the premium now over-

due, the Company does not waive its rights in the event any *future* premium is not paid when due.' (Italics ours.)

"However, the implication inherent in this provision is that, if the Company *does* accept payment of a certain premium, it thereby waives its right to forfeiture based upon nonpayment of that particular premium."

■ An insurance company will be deemed to waive any ground which would otherwise entitle it to rescind a policy or treat it as forfeited when, despite knowledge of the facts giving it the option, it impliedly recognizes the continuing effect of the policy. (*Page* v. *Washington Mut. Life. Assn.*, *supra.*) When the terms of a policy are violated, and the company knows it and fails to declare a forfeiture, or to cancel, or rescind the contract in a reasonable time, it will be regarded as having waived the violation, or as being estopped from asserting it as a ground of nonliability. (*Steil* v. *Sun Ins. Office*, 171 Cal. 795, 801 [155 P. 72].) If the part payment made on May 31 was a violation, there is no doubt that respondent, at that time assuming a violation, had the option to cancel the policy.

The admitted facts show that there was no valid contract to vary the terms of the policy by a unilateral extension of the grace period.

■ Accepting arguendo respondent's theory of full quarterly payments as sound, it would not be disputed that respondent could have returned the May 31st check and exercised its option to cancel the policy. Had it done so, there would be no liability on the policy if the insured had died even a month earlier. However, since it did accept the May 31st check, it cannot be heard to say, that it was on the basis of a unilateral extension of the grace period. Respondent is as fully as obligated as if the May 31st payment had been in cash.

■ Evidence tending to show waiver is favorably regarded by a court. Forfeiture of a policy will be avoided on any reasonable showing. (*National Auto. Ins. Co.* v. *Industrial Acc. Com.* (1937) 19 Cal.App.2d 276, 281 [65 P.2d 128].)

The judgment is reversed. The trial court is directed to enter judgment for appellant against respondent John Hancock Mutual Life Insurance Company in the sum of $10,000. Costs on appeal will be borne by respondent.

Fleming, J., concurred.

HERNDON, J.—I dissent. In my opinion, the majority erroneously hold *as a matter of law* that respondent's asserted acceptance of a check for $21.61 mailed by appellant on May 31, 1963, the last day of grace for the payment of the $41.61 quarterly premium due on May 1, 1963, operated as a waiver of respondent's right to insist upon full payment of said premium within the grace period.

In my view, four basic errors underlie this mistaken holding: (1) failure to recognize that in this case, as in most cases, the question whether or not there was a waiver is a question of fact; (2) a misconception of the law governing the doctrines of waiver and estoppel and establishing the elements essential to their application; (3) a failure to take into account substantial and convincing items of evidence supportive of the trial court's findings upon the determinative issues of fact; and (4) the mistaken assumption that respondent accepted the $21.61 tendered in part payment of the overdue premium.

The majority opinion states the ultimate question presented by this appeal as follows: "The question presented is whether a tender of part payment of the second quarterly premium on the last day of the grace period with a concurrent indorsement on the notice, to wit: 'Rest 7/1' had the effect of maintaining the policy for the quarter in question."

It appears to me, however, that the truly determinative question presented for appellate review in this case is simply this: Is there substantial evidence in the record to support the trial court's findings of fact and particularly its findings that respondent did not waive its contractual right to declare the policy void for nonpayment of the overdue premium and was not estopped to assert that right?

As I shall undertake to show, the evidence supportive of the trial court's findings is not only substantial but strongly convincing. Before proceeding to review some of that evidence, I deem it appropriate to restate applicable rules of law. As we said in *Scott* v. *Federal Life Ins. Co.,* 200 Cal.App.2d 384, 391-392 [19 Cal.Rptr. 258]:

"To constitute a waiver there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. (51 Cal.Jur.2d, Waiver, § 3, pp. 307-308, and cases cited therein.) The party who has the right may waive it without reliance by another. The doctrine of estoppel, how-

ever, is based on the theory that the party estopped has by his declarations or conduct misled another to his prejudice so that it would be inequitable to allow the true facts to be used against the party misled.

" ' [T]he party relying upon the doctrine of equitable estoppel must prove the existence of the four required elements essential to its application: (1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. [Citations.] Negligence that is careless and culpable is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel. [Citations.]' (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.*, 54 Cal.2d 773, 778-779 [8 Cal.Rptr. 448, 356 P.2d 192].)

"Whether a waiver has occurred is usually a question of fact the determination of which, if supported by substantial evidence, will not be disturbed on appeal (*Grantham* v. *State Farm etc. Ins. Co.*, 126 Cal.App.2d Supp. 855, 862 [272 P.2d 959, 48 A.L.R.2d 1088]; *Phillips* v. *Reserve Life Ins. Co.*, 128 Cal.App.2d 540, 547 [275 P.2d 554]), unless the only inference which can be drawn from the evidence is to the contrary. (*Huttlinger* v. *Far West Enterprises*, 131 Cal.App.2d 808, 811 [281 P.2d 554]; *O'Connell* v. *Weitzman*, 168 Cal.App.2d 400, 404 [36 P.2d 592].) The rule is the same for estoppel. (*Cardosa* v. *Fireman's Fund Ins. Co.*, 144 Cal.App.2d 279, 282-283 [300 P.2d 875]; *Sawyer* v. *City of San Diego*, 138 Cal.App.2d 652, 662 [292 P.2d 233].) ''

As the majority opinion indicates, it is necessarily conceded that "Respondent, on the expiration of the 31-day grace period, had the undoubted right to insist on strict performance." It is self-evident, of course, that the allowance of the 31 days of grace is designed to ameliorate the strictness of the insured's duty to pay the premiums in conformity with the terms of the contract.

It is immediately apparent from an examination of the findings of the trial court in this case that they are not limited to mere conclusional findings of the ultimate facts. They are more than usually helpful because, to the extent they find the evidentiary facts, they demonstrate the adequacy of the evi-

dentiary basis upon which they rest. The following are particularly pertinent excerpts from those findings:

"6. That on said occasion, on or about February 8, 1963, when said written policy of life insurance numbered 7834151 was offered to and accepted by Marvin A. Pierson as aforesaid, Marvin A. Pierson and plaintiff herein advised the defendant Glenn J. Gormley that they would mail the balance of the first quarterly premium due thereunder then due, to wit, the sum of $21.80, to the defendant John Hancock Mutual Life Insurance Company at a subsequent date; that the defendant Glenn J. Gormley did then and there advise the Piersons to mail said balance immediately; that the defendant Gormley did then and there deliver the possession of said original written policy of life insurance numbered 7834151 to Marvin A. Pierson; that the said Marvin A. Pierson accepted possession of said policy of life insurance and retained possession of same until his subsequent death; that the act of the defendant Gormley in acquiescing in the request of the Piersons to mail the balance of the first quarterly premium then due to the defendant John Hancock Mutual Life Insurance Company and advising them to so mail it immediately did not mislead Marvin A. Pierson or the plaintiff herein, or either of them, concerning the date, time or method of payment of any subsequent premiums reserved in said policy of insurance, specifically including but not limited to the quarterly premium in the sum of $41.61 due under the terms of said policy on May 1, 1963.

" . . . . . . . . . . . . .

"8. That defendant John Hancock Mutual Life Insurance Company, prior to May 1, 1963, notified the said Marvin A. Pierson and the plaintiff herein by written notice of premium due that the second quarterly premium in the sum of $41.61 was due under said policy of life insurance numbered 7834151 on May 1, 1963, for the quarter May, June and July, 1963; that notwithstanding said notice and the terms and provisions of said policy of insurance, said premium was not paid; that said policy of life insurance numbered 7834151 contains a provision that any premium not paid when due may be paid within a grace period of 31 days after its due date and that the insurance will continue in full force during said 31-day grace period but shall not be in force thereafter; that the premium of $41.61 due May 1, 1963 was not paid during said 31-day grace period and said policy of life insurance lapsed under the terms and provisions thereof on June 1, 1963; that

said Marvin A. Pierson and plaintiff herein knew that on and after June 1, 1963, said policy of life insurance numbered 7834151 was beyond the grace period and had lapsed.

"9. That on May 31, 1963, plaintiff herein mailed her personal check to defendant John Hancock Mutual Life Insurance Company, payable to its order in the sum of $21.61 as a tender of partial payment of premium due under said policy of insurance numbered 7834151 on May 1, 1963, in the sum of $41.61; that plaintiff returned to the defendant John Hancock Mutual Life Insurance Company the aforesaid written notice of premium due with said personal check; that prior to the return of said premium notice plaintiff had written thereon in her own handwriting 'the Rest 7/1'; that said partial payment of premium was not in accordance with any term or provision of said policy of insurance and was forthwith rejected by the defendant John Hancock Mutual Life Insurance Company; that said defendant company did orally notify plaintiff and Marvin A. Pierson of said rejection on or about June 3, 1963 and again on or about June 11, 1963; that plaintiff and Marvin A. Pierson, and each of them, understood said oral notice of rejection; that said defendant Company did thereafter on October 7, 1963, tender to plaintiff the return of said partial payment; that said defendant Company did, by written notice of lapse mailed to Marvin A. Pierson, on or about June 5, 1963, notify said Marvin A. Pierson that said written policy of life insurance numbered 7834151 had lapsed on June 1, 1963 by reason of the failure to pay the quarterly premium due May 1, 1963.

"10. That it is not true that plaintiff and her husband made partial payments of premiums under said policy of insurance corresponding to monthly premium payments; that it is not true that the plaintiff and her husband were advised by the defendant Glenn J. Gormley, or otherwise, that said policy of insurance would be revised to conform to the monthly billing specified in the application, or otherwise; that it is not true that the defendant John Hancock Mutual Life Insurance Company accepted a partial payment of the second quarterly premium; that it is not true that the plaintiff and her husband were lulled into a false sense of security and believed the life insurance protection was in full force and effect at the time of the husband's death, or otherwise.

"11. That the policy of life insurance numbered 7834151 lapsed by its terms on June 1, 1963, and was not in full force and effect on July 3, 1963, the date of the death of Marvin A. Pierson.

"12. That John Hancock Mutual Life Insurance Company did not waive its contractual rights or any other rights, but on the contrary insisted upon the performance of same and notified plaintiff and her husband thereof, which notifications were understood and comprehended by plaintiff and her husband.

"13. That John Hancock Mutual Life Insurance Company is not estopped to assert its contractual rights and is not estopped to assert the forfeiture of said policy of life insurance numbered 7834151 for non-payment of premiums reserved therein.

"14. That said policy of life insurance issued to and accepted by Marvin A. Pierson was, until its lapse, a contract of insurance between the defendant John Hancock Mutual Life Insurance Company and said Marvin A. Pierson and its terms and provisions were the contract which the parties intended; that said policy, being the contract which the parties intended, does not require reformation to reflect the true intent of the parties."

Reference to the record demonstrates the sufficiency of the evidence to justify and support the quoted findings.

It is undisputed that a written notice of the quarterly premium payment due on May 1, 1963, was received by the insured prior to its due date. This notice stated in clear and unambiguous language the amount of the premium due and the due date. On or about June 3, respondent Gormley notified appellant that the grace period had expired but that if she would give him a check for the balance of the premium he would undertake to have the policy reinstated, but that after the 15th of June, the company would not reinstate the policy without an application for reinstatement with proof of continued insurability. On this occasion appellant told Mr. Gormley that she would send in her check.

On or about June 5, the insured received from respondent a written notice stating that the grace period allowed for payment of the premium on the policy had expired and that the policy was no longer in force. This notice also contained a statement of the conditions upon which the company would reinstate the policy.

On June 11, 1963, respondent Gormley returned to the Pierson home and had a further conversation with Mrs. Pierson, the appellant herein. In this conversation Mr. Gormley asked her whether or not she had sent in the balance of the premium payment necessary to accomplish reinstatement of

the lapsed policy. In response to the question, "What did she say?" Mr. Gormley answered: "And she said no, she hadn't, and I again explained that it would have to be in by the 15th. . . . She said that she would mail it in by the 15th."

In the same conversation Mr. Gormley suggested to Mrs. Pierson that a meeting be arranged with Mr. Pierson for the purpose of discussing further possible changes in their insurance program. It was agreed that the parties would meet on June 17. However, Mrs. Pierson later called and cancelled this meeting, stating that Mr. Pierson would call and make another appointment. Mr. Gormley did not hear from the Piersons again until June 30, when he received a telephone call from Mrs. Pierson. At this time Mr. Pierson had been taken to the hospital and appellant was aware of the seriousness of his condition. She asked Mr. Gormley if she could send in the premium payment. The substance of that conversation is indicated by the following excerpt from Mr. Gormley's testimony:

"Q. Would you tell us what that conversation was? A. Mrs. Pierson informed me that her husband was sick and seriously ill, I presumed, because she said he was in the hospital, and she asked me about the premium. And I said—Well. she said she wanted to send the premium in. And I said, 'You could not send it in unless you had a reinstatement form.' And she said, 'How do you do that?' I said, 'Well, Mr. Pierson would have to sign a reinstatement form, and if he is in the hospital, then he couldn't answer the health questions, and I do not think the company would accept the reinstatement form.' And she said, 'Well, can't I send the money in anyhow?' And I said, 'Well, you can, but without the reinstatement form, it just wouldn't be accepted.' Q. Is that the full substance of the conversation then? A. Yes, that is the best I can remember."

It is submitted that the judgment of the trial court is based upon findings which clearly and definitely decide every material issue of fact; that these findings are well supported by substantial evidence, and that the record discloses no error in the proceedings of the trial court. The judgment should be affirmed.

A petition for a rehearing was denied June 5, 1968, and the petition of the respondent company for a hearing by the Supreme Court was denied July 3, 1968.