*1044
 
 OPINION
 

 Per Curiam:
 

 Appellant Juanita McKeeman sued for breach of an insurance contract. After Juanita presented her evidence at trial, the district court dismissed the case pursuant to NRCP 41(b) for failure to prove a sufficient case. Juanita asserts that dismissal was improper because she presented prima facie proof of waiver and estoppel upon which the jury could have granted relief. We agree and reverse the dismissal.
 

 FACTS
 

 The following evidence was presented at trial. In August 1985, appellant’s husband, Myron Dennis McKeeman (Dennis), obtained a $250,000 term life insurance policy from respondent General American Life Insurance Company. Dennis originally procured the policy as security for a business loan which he obtained. The policy included the following provisions:
 

 Your premium is in default if you do not pay it on or before its due date. We will allow a grace period of 31 days after the premium due date for payment of each premium except the first. During this period no interest will be charged on the premium due, and the policy will remain in force. If the insured dies during the grace period, the amount of any unpaid premium due through the date of death will be deducted from the proceeds of the policy.
 

 If any premium remains unpaid after the grace period, this policy will cease and become void.
 

 Within five years after a default in premium payment, but no later than the policy anniversary nearest your 95th birthday, you may apply for reinstatement. You must submit proof satisfactory to us that the insured is insurable by our standards. You must pay all overdue premiums with interest at 6% per year compounded annually to the date of reinstatement. The insured must be alive on the date we approve the request for reinstatement. If the insured is not alive, such approval is void and of no effect.
 

 Commencing with the third policy year, Dennis had difficulty making timely premium payments. Dennis did not pay the annual premium due on November 15, 1987, until January 15, 1988-thirty days past the policy grace period. Despite the delinquency, General American accepted the payment without requiring reinstatement measures. Dennis did not make his May 15, 1989,
 
 *1045
 
 quarterly payment until June 30, 1989 — fifteen days after the grace period had expired. Again, the policy continued in force without adherence to reinstatement procedures.
 

 Dennis failed to timely pay the premium payment for the sixth policy term due on November 15, 1990. General American’s agent sent Dennis a letter dated January 16, 1991, notifying him that he should mail the premium at the “earliest opportunity so that there is no lapse in coverage.” In a letter dated January 25, 1991 — about forty days after expiration of the grace period— General American notified Dennis that his policy had lapsed and requested that he submit to reinstatement proceedings. Dennis promptly complied, and his policy was reinstated on February 19, 1991.
 

 Dennis failed to pay on time the next premium payment, due February 15, 1991. Sometime after the expiration of the grace period, General American sent Dennis a “special courtesy offer,” allowing him to avoid reinstatement proceedings by remitting payment before April 8, 1991, which Dennis did. The premium payment due May 15, 1991, was also delinquent. In a letter dated July 31, 1991 — about forty-five days after expiration of the grace period — General American informed Dennis that his policy had lapsed and that he could apply for reinstatement. Dennis successfully did so.
 

 The premium payment for the seventh policy term, due on November 15, 1991, was not made within the grace period. However, on December 30, 1991, after expiration of the grace period, Dennis executed a “Single Sum Change of Beneficiary” in which his wife, Juanita, was named as primary beneficiary. Dennis gave this form to his insurance agent, who forwarded it to General American. General American recorded the change of beneficiary on January 14, 1992, and sent Dennis notice of the change three days later. There was no reference to any lapse in the policy.
 

 When Dennis received notice of the change of beneficiary, he took it to Juanita and said, “This is finally official. You are the change of beneficiary; you’re on the policy. I’m just really happy about this. Now you’re well taken care of.” Approximately two weeks later, on February 5, 1992, Dennis committed suicide.
 

 Earlier that day, Dennis had met with his bookkeeper to determine which bills needed to be paid. Dennis instructed her to pay the overdue premium to General American. That evening, after learning of Dennis’s demise, the bookkeeper mailed the payment and backdated the check to February 3, 1992. On February 7, 1992, two days after Dennis’s death, General American sent Dennis notice that his policy had lapsed. On February 10, 1992, General American cashed the backdated check. On February 12,
 
 *1046
 
 1992, Dennis’s bookkeeper sent a second check to General American for the next quarterly premium. The following day, General American was notified about Dennis’s death. Sometime thereafter, General American cashed the second check.
 

 On February 28, 1992, Juanita’s counsel sent General American a demand letter for payment under the policy. The letter stated in part that the past due premium had been mailed to General American on February 3, 1992. On March 12, 1992, General American sent Juanita a letter informing her that since necessary reinstatement documentation had not been received, the policy was void. Along with this letter, General American tendered to Juanita a check for the two premiums paid after Dennis’s death. On June 29, 1992, Juanita filed suit against General American in Washoe County District Court, alleging breach of contract.
 

 A four day jury trial commenced on June 1, 1993. The district court granted General American’s motion in limine to exclude testimony by an expert witness proffered by Juanita. The witness, Clinton Miller, had a bachelor of science degree in insurance risk management. He worked as an insurance adjuster from 1971 to 1987, obtaining a California adjuster’s license in 1980. This work was mainly with casualty and property claims but included adjustment of life insurance claims. Miller had written a book on how insurance companies settle cases in which he discussed life insurance cases and case law. He had written about thirty articles on insurance, some on life insurance. He taught law seminars regarding insurance practices and customs. Miller had qualified and testified as an expert witness in California, Texas, and North Dakota.
 

 Juanita offered his testimony mainly in regard to insurance industry practice as to change of beneficiaries on allegedly void policies and the acceptance and return of late premium payments. General American objected on the grounds that Miller was not a specialist in life insurance and that the practices of other life insurance companies were not relevant to this case. The district court ruled: “He’s not going to testify. I don’t see him as anything other than just an additional witness.”
 

 During the trial, deposition testimony by Sandra Lee Powell was read into evidence. Powell was the insurance representative at the bank that provided Dennis with the business loan which required the life insurance policy as security. Powell monitored Dennis’s life insurance until he paid off the loan. Juanita wished to present Powell’s testimony regarding her opinion of whether certain notices, sent by General American to Dennis and her when Dennis was delinquent in his premium payments, meant that Dennis’s coverage had lapsed. The district court sustained
 
 *1047
 
 General American’s objections to this testimony after stating that it would not allow in Powell’s “subjective evaluation in interpreting what somebody else is doing.”
 

 At the conclusion of Juanita’s case in chief, General American moved the district court for an order of involuntary dismissal pursuant to NRCP 41(b), which the court granted. This appeal ensued.
 

 DISCUSSION
 

 Dennis obtained the life insurance policy from General American’s agent in California and listed a California address as his residence. Accordingly, the district court applied California law to substantive issues and Nevada law to procedural issues.
 

 NRCP 41(b) provides that after a plaintiff has presented his or her evidence, a defendant may move for dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury. In ruling on such a motion, a court must accept the plaintiff’s evidence as true, draw all reasonable inferences in the plaintiff’s favor, and not assess the credibility of the witnesses or the weight of evidence. Fernandez v. Admirand, 108 Nev. 963, 968, 843 P.2d 354, 358 (1992). To defeat the motion, the plaintiff must have presented a prima facie case upon which the trier of fact can grant relief.
 
 Id.
 

 Waiver and Estoppel
 

 The policy in this case provided that if any premium remained unpaid after the thirty-one day grace period, the policy became void. The premium due November 15, 1991, was not paid until February 5, 1992. By its terms, the policy had become void due to default in premium payment. However,
 

 “a past course of conduct of acceptance by the insurer of payments of premiums after the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time, or the insurer may be said to be estopped to assert the forfeiture where the insured may be said to have been reasonably led to believe that payments made within a reasonable time after the grace period would be acceptable.”
 

 McCary v. John Hancock Mutual Life Insurance Co., 46 Cal. Rptr. 121, 125 (Ct. App. 1965) (quoting Page v. Washington Mut. Life Ass’n, 125 P.2d 20, 23 (Cal. 1942)).
 

 Juanita provided evidence that General American may have waived its right to declare a forfeiture because of the untimely premium payment. On three earlier occasions, General American
 
 *1048
 
 accepted late payments from Dennis without declaring forfeiture and requiring reinstatement. Moreover, on the occasion in question, General American sent Dennis a letter on January 17, 1992, notifying him of the registration of his change of beneficiary, and neither it nor its agent notified Dennis of any lapse. Under the law of California, as well as elsewhere, a jury could reasonably infer that this behavior constituted waiver of the right to claim strict forfeiture for untimely payment of premiums.
 

 Waiver requires “an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.” Scott v. Federal Life Insurance Company, 19 Cal. Rptr. 258, 262 (Ct. App. 1962). An insurance company waives strict compliance with premium payment requirements when it deals with an insured as though no lapse has occurred, even though a premium remains unpaid after expiration of the grace period. Pierson v. John Hancock Mut. Life Ins. Co., 68 Cal. Rptr. 487, 490 (Ct. App. 1968). The appellant in
 
 Pierson
 
 was the beneficiary of her husband’s life insurance policy, issued by the respondent insurance company.
 
 Id.
 
 at 488. The appellant paid part of the quarterly premium; the grace period expired without full payment, but the insurer said it would accept the remaining payment by June 15, 1963, without requiring reinstatement.
 
 Id.
 
 at 488-89. No further payment was made, and the insured died on July 3, 1963.
 
 Id.
 
 at 489. The court held that because the insurer had not received the premium due on the expiration of the grace period, it had the right to insist on strict performance, but its failure to so insist, coupled with its past conduct in receiving the partial payment, constituted waiver.
 
 Id.
 
 at 490.
 

 An insurance company will be deemed to waive any ground which would otherwise entitle it to rescind a policy or treat it as forfeited when, despite knowledge of the facts giving it the option, it impliedly recognizes the continuing effect of the policy. When the terms of a policy are violated, and the company knows it and fails to declare a forfeiture, or to cancel, or rescind the contract in a reasonable time, it will be regarded as having waived the violation, or as being estopped from asserting it as a ground of non-liability.
 

 Id.
 
 at 490 (citation omitted). This reflects the law applied by courts in general.
 
 See
 
 15 John Alan Appleman & Jean Appleman, Insurance Law and Practice § 8403 (1985);
 
 see, e.g.,
 
 Owens v. North Carolina Mut. Life Ins. Co., 179 S.E. 37 (S.C. 1935) (affirming jury verdict because jury could have found waiver of
 
 *1049
 
 forfeiture where insurer allowed insured to change beneficiary designation after default in premium payment).
 

 In the instant case, General American continued to deal with Dennis as though his insurance policy remained in force, even after the grace period for premium payment had expired. At the time General American accepted Dennis’s change of beneficiary, Dennis was more than two months delinquent on his premium payment. Had General American actually forfeited the policy for nonpayment, there would have been no need for it to change the beneficiary. In doing so, especially in light of its earlier acceptance of late payments, a jury could reasonably conclude that General American recognized the continuing existence of a valid insurance policy.
 

 An insurer cannot waive enforcement of the right to timely premium payment selectively, recognizing continuing policy coverage in cases where late payment is made, but denying coverage if instead a claim is made. “Where there has been a waiver of a breach of condition, or of the falsity of a representation or warranty, the result is the same as though no breach had ever occurred or the statement in question had been true.” 7 George J. Couch, Cyclopedia of Insurance Law § 35:251 (Ronald A. Anderson et al. eds., 2d ed. 1985) (citation omitted). “[WJhere an insurer has waived a forfeiture it cannot thereafter revoke its action in so doing.”
 
 Id.
 

 Waiver of forfeiture simply means that when an insurer does not strictly enforce forfeiture provisions, until it affirmatively invokes them, the insurer assumes the risk that a claim will be made before the premium is paid. In this case, on two prior occasions General American affirmatively invoked the forfeiture provisions of the policy when Dennis’s payments were tardy. On those two occasions, General American notified Dennis that his policy had lapsed and required him to submit to reinstatement procedures before extending coverage again. On the instant occasion also, General American sent Dennis such a notification — but not until February 7, 1992, two days after his death. The facts in evidence show that General American did not declare the policy lapsed and require reinstatement until after Dennis’s death.
 

 The California appellate court stated in
 
 Pierson:
 
 “Evidence tending to show waiver is favorably regarded by a court. Forfeiture of a policy will be avoided on any reasonable showing.” Pierson v. John Hancock Mut. Life Ins. Co., 68 Cal. Rptr. 487, 490 (Ct. App. 1968). Thus, the district court erred in not recognizing that Juanita had presented a prima facie case of waiver.
 

 It is also possible that a jury could find waiver and grant relief to Juanita based on the fact that General American did not tender
 
 *1050
 
 a refund of the two premium payments made after Dennis’s death until about four weeks after learning of Dennis’s death. “Acceptance of a premium by an insurance company, when it might have insisted on a forfeiture, has been held to amount to a recognition that the policy was in full force and effect; and to establish a waiver of the right to claim forfeiture.”
 
 Id.
 
 at 489 (citations omitted);
 
 see also
 
 Glass v. Harvest Life Ins. Co., 425 N.W.2d 107 (Mich. Ct. App. 1988) (waiver applies to insurer who, knowing of insured’s death, accepts and retains premium tendered to cover loss; “[t]he premium must be promptly returned upon learning that death preceded payment”). It was the jury’s place to decide whether, under the total circumstances, General American’s delay in refunding the premiums was justified due to confusion caused by the backdated first check or whether the delay was so inconsistent with the intent to declare a forfeiture of the policy that it constituted waiver. This it was not permitted to do.
 

 Furthermore, Juanita established a prima facie case of estop-pel. An insurer may by its conduct or dealings apart from the policy itself be estopped from denying that coverage has been furnished for a risk which the insured has been led to believe is covered. Middlesex Mut. Ins. Co. v. Ramirez, 172 Cal. Rptr. 297, 300 (Ct. App. 1981).
 

 The doctrine of equitable estoppel generally requires proof of four elements: the party to be estopped must have been aware of the facts; it must have intended that its act or omission be acted upon, or act in such a manner that the party asserting estoppel had a right to believe that it so intended; the party asserting estoppel must have been unaware of the true facts; and it must have relied upon the other party’s conduct to its detriment. Lusardi Const. Co. v. Aubry, 824 P.2d 643, 654 (Cal. 1992). These elements could be inferred from the evidence presented at trial as follows. General American was aware that Dennis had not paid his premium and, assuming that the policy had lapsed, was aware of the lapse. Dennis had a right to believe, based on General American’s prior acceptance of late payments and its recording of his change of beneficiary, that General American considered the policy valid and intended Dennis to act with the assurance that the policy would provide for his wife should he die. Dennis was unaware that General American considered the policy void. Dennis relied on General American’s conduct and committed suicide, intending to provide life insurance benefits to his wife — this reliance was to his detriment if in fact the policy would not provide for Juanita.
 

 
 *1051
 

 Expert Testimony
 

 “If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge.” NRS 50.275. The purpose of expert testimony “is to provide the trier of fact a resource for ascertaining truth in relevant areas outside the ken of ordinary laity.” Townsend v. State, 103 Nev. 113, 117, 734 P.2d 705, 708 (1987). Like all evidence, it must be relevant, and its probative value must not be substantially outweighed by other considerations, such as “needless presentation of cumulative evidence.” NRS 48.035(2). The admission of expert testimony lies within the sound discretion of the trial court. Brown v. State, 110 Nev. 846, 852, 877 P.2d 1071, 1075 (1994).
 

 The district court did not find Miller to be an expert or that his testimony was relevant, both of which appeared to be established. The court excluded Miller’s testimony because he was “just an additional witness,” perhaps believing that his testimony would be cumulative. The record does not support a finding that Miller’s testimony was cumulative. Juanita offered his testimony in regard to insurance industry practices as to change of beneficiaries on allegedly void policies, the acceptance and return of late premium payments, and reinstatement of lapsed coverage. This was relevant to a crucial issue before the jury: whether General American waived its right strictly to enforce the forfeiture provisions of the policy. Juanita had no other witnesses that could or did address the matters Miller would have testified to.
 

 The industry -practices which Miller would have testified to were beyond the ken of most jurors, and such testimony would have assisted them in determining whether General American’s actions showed actual intent to waive the right to declare forfeiture or were so inconsistent with the intent to enforce that right as to constitute its waiver. We conclude, therefore, that the district court abused its discretion in excluding this expert testimony.
 

 Lay Opinion Testimony
 

 NRS 50.265 provides that opinion testimony by a non-expert witness
 

 is limited to those opinions or inferences which are:
 

 1. Rationally based on the perception of the witness; and
 

 2. Helpful to a clear understanding of his testimony or the determination of a fact in issue.
 

 
 *1052
 
 Juanita wished to present the testimony of a bank’s insurance representative regarding whether certain notices, sent by General American to Dennis when he was delinquent in his premium payments, meant that Dennis’s coverage had lapsed. The district court did not allow in the insurance representative’s “subjective evaluation in interpreting what somebody else is doing.”
 

 Juanita did not attempt to qualify Powell, the insurance representative, as an expert and does not argue on appeal that she was so qualified. Juanita nevertheless argues that since Powell had received copies of the notices in question, Powell’s opinion would have been rationally based on her own perception. However, the notices were available for the jurors to read, and it appears that the opinion of another layperson would not have been helpful to the jurors in determining their meaning. Therefore, the district court did not abuse its discretion in determining that ay person opinion was not appropriate to elucidate the meaning of the notices.
 

 CONCLUSION
 

 Juanita presented sufficient evidence for a jury to grant her relief based on waiver or estoppel. Therefore, the district court erred in granting the motion for involuntary dismissal pursuant to NRCP 41(b). The court also erred in excluding testimony by Juanita’s expert. Accordingly, we reverse the order of dismissal and remand for further proceedings consistent with this opinion.